JOSEPH SORACCO ET AL. *v.* WILLIAMS
SCOTSMAN, INC., ET AL.
(SC 17856)

Rogers, C. J., and Katz, Vertefeuille, Zarella and Schaller, Js.

Argued October 14, 2008—officially released June 9, 2009

*Ellen M. Aspell*, for the appellant (intervening plaintiff Manafort Brothers, Inc.).

*William F. Gallagher*, with whom, on the brief, was *David McCarry*, for the appellees (plaintiffs).

*Opinion*

ZARELLA, J. This is an appeal by the intervening plaintiff, Manafort Brothers, Inc. (Manafort), from the trial court's order regarding the allocation of proceeds of a settlement reached in the underlying negligence action brought by the plaintiffs, Joseph Soracco and his spouse, Cheryl Soracco,[1] against the named defendant, Williams Scotsman, Inc., and the defendant E&F/Walsh Building Company, LLC.[2] On appeal, Manafort claims that the trial court (1) improperly considered facts not in evidence in determining that the equal apportionment of the settlement proceeds between the plaintiffs was

[1] We hereinafter refer to Joseph Soracco and Cheryl Soracco collectively as the plaintiffs.

[2] The action was withdrawn as to the defendant E&F/Walsh Building Company, LLC. In the interest of simplicity, we hereinafter refer to Williams Scotsman, Inc., as the defendant.

reasonable,[3] and (2) improperly allowed the plaintiffs and the defendant to settle the matter without Manafort's consent. The plaintiffs oppose Manafort's claims on several grounds, including that the record is inadequate to determine whether the trial court considered facts not in evidence and that the court was acting with the consent of all parties when it approved the settlement allocation. We need not address the merits of these claims, however, because we conclude that the trial court lacked subject matter jurisdiction to determine whether the allocation of the settlement proceeds was reasonable.

The following uncontested facts and procedural history are relevant to our analysis. The plaintiffs brought an action against the defendant seeking to recover for injuries that Joseph Soracco (Soracco) had sustained on October 16, 2001, as a result of the alleged negligence of the defendant's agents. Soracco sustained his injuries when he fell from a construction trailer after an employee of the defendant allegedly removed the stairs leading from the trailer door to the ground without ensuring that the trailer was unoccupied. Soracco was an employee of Manafort at the time of the accident and was injured in the course of his employment. Manafort became obligated to and did pay Soracco workers' compensation benefits as a result of his injuries. Soracco's claim for damages was brought pursuant to General Statutes § 31-293 and his spouse's claim for loss of consortium was derivative of his claim.[4]

Manafort intervened in the plaintiffs' action, pursuant to § 31-293 (a), seeking to recover the workers' compen-

---

[3] The trial court determined that it was "fair, just and reasonable and appropriate" to allocate 50 percent of the settlement proceeds to Joseph Soracco and the remaining 50 percent to Cheryl Soracco.

[4] See, e.g., *Izzo* v. *Colonial Penn Ins. Co.*, 203 Conn. 305, 312, 524 A.2d 641 (1987) ("[l]oss of consortium, although a separate cause of action, is not truly independent, but rather derivative and inextricably attached to the claim of the injured spouse").

sation benefits that it had paid and become obligated to pay to Soracco. Manafort also asserted a workers' compensation lien in this action in the amount of $542,411.69. The amount of Manafort's lien proved to be the main source of contention during the preliminary phase of the litigation.

The primary basis for the dispute regarding the amount of the lien and the defendant's liability was a prior, work-related accident that had occurred on May 7, 1999, in which Soracco had suffered several severe injuries when a steel girder fell across his chest. At the time of the 2001 accident, Soracco only recently had returned to work for Manafort in a "light duty" capacity after missing nearly two and one-half years due to the injuries that he had sustained in the 1999 incident.

On October 16, 2006, with the assistance of the court, *Holzberg, J.*, the parties attempted to mediate the various claims. It was the defendant's position during mediation that the far greater portion of Manafort's workers' compensation lien was attributable to the 1999 injury rather than the 2001 injury. In fact, the defendant asserted that only approximately $30,000 of Manafort's total lien of $542,411.69 was related to the 2001 injury. The parties were unable to reach a settlement during the mediation, and the controversy regarding the legitimate amount of Manafort's lien never was settled or adjudicated.

On October 23, 2006, following the unsuccessful mediation attempt, the plaintiffs and the defendant reported to Judge Holzberg that they had reached a settlement agreement. The plaintiffs' counsel also informed the court that he had provided the defendant with a withdrawal and a formal release from liability.[5] The substance of the settlement agreement was that, in

---

[5] The record reflects that the plaintiffs' withdrawal of the action occurred on October 23, 2006.

exchange for the withdrawal and release, the defendant would pay the plaintiffs a total sum of $750,000. The plaintiffs' attorney indicated that each plaintiff would receive one half of that amount in satisfaction of their individual claims. Unsatisfied with this intended apportionment, Manafort requested a hearing to allow the court to determine whether the equal division of the settlement proceeds was reasonable. Apparently seeking the court's imprimatur for their settlement, the plaintiffs acquiesced to this procedure.

Judge Holzberg agreed to make a finding regarding whether an equal division of the proceeds between the plaintiffs was reasonable. After considering testimony from Soracco's spouse as well as arguments from the plaintiffs and Manafort[6] regarding the reasonableness of the settlement allocation, Judge Holzberg upheld the equal apportionment of the settlement proceeds between the plaintiffs.[7] Manafort thereafter appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Additional facts will be set forth as necessary.

We begin our analysis with a brief statement of the relevant principles of standing, followed by an examination of § 31-293 (a), in order ultimately to determine whether Manafort had standing to contest the allocation of the settlement proceeds. The question of standing implicates a court's subject matter jurisdiction. E.g., *McWeeny* v. *Hartford*, 287 Conn. 56, 63, 946 A.2d 862 (2008). "[A] court does not have subject matter jurisdiction over claims brought by persons who do not have standing . . . ." (Citation omitted.) *Orsi* v. *Senatore*, 230 Conn. 459, 470, 645 A.2d 986 (1994); see also *Middle-*

---

[6] The plaintiffs previously having withdrawn their action, the defendant was not represented at this hearing.

[7] The trial court did not dismiss or otherwise dispose of Manafort's intervening complaint at any point during the proceedings.

*town* v. *Hartford Electric Light Co.*, 192 Conn. 591, 595, 473 A.2d 787 (1984) ("[t]he issue of . . . standing must be addressed before we reach the substantive merits of the [parties'] claim, because standing has jurisdictional implications"), overruled in part on other grounds by *Waterbury* v. *Washington*, 260 Conn. 506, 545, 800 A.2d 1102 (2002). Moreover, concerns regarding subject matter jurisdiction implicate the court's fundamental authority and may properly be raised and decided by the court sua sponte.[8] See, e.g., *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005) ("[I]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." [Internal quotation marks omitted.]). Furthermore, there is no question that this court has jurisdiction to consider, on its own initiative, the jurisdiction of the trial court. See, e.g., *Commissioner of Transportation* v. *Rocky Mountain, LLC*, 277 Conn. 696, 703, 894 A.2d 259 (2006); *Lewis* v. *Planning & Zoning Commission*, 275 Conn. 383, 385, 880 A.2d 865 (2005).

It is axiomatic that aggrievement is a basic requirement of standing, just as standing is a fundamental requirement of jurisdiction. "If a party is found to lack [aggrievement], the court is without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Bingham* v. *Dept. of Public Works*, 286 Conn. 698, 701, 945 A.2d 927 (2008); see also *Stauton* v. *Planning & Zoning Commission*, 271 Conn. 152, 157, 856 A.2d 400 (2004) ("[P]leading and proof of

---

[8] We note, however, that, in the present case, the parties were given an opportunity to, and did, submit supplemental briefs on the related issues of final judgment, ripeness and standing.

aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal. . . . A possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised." [Internal quotation marks omitted.]). There are two general types of aggrievement, namely, classical and statutory; either type will establish standing, and each has its own unique features. "Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Pond View, LLC* v. *Planning & Zoning Commission*, 288 Conn. 143, 156, 953 A.2d 1 (2008).

With these principles in mind, we now turn to a detailed examination of § 31-293 (a), the statute at issue in this case. A review of the statute and its operation demonstrates that Manafort lacked standing to contest the allocation of the settlement proceeds, and, thus, the trial court lacked jurisdiction to enter its order. Section 31-293 is a detailed scheme governing the parties' rights in third party workers' compensation scenarios. Its primary effect is to provide a mechanism for an injured employee to assert a claim against the party allegedly liable for his injury, notwithstanding the employee's statutory claim for workers' compensation.[9] The statute also allows an employer who is obligated

[9] General Statutes § 31-293 (a) provides in relevant part: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of the injured employee against such person, but the injured employee may proceed at law against such person to recover damages for the injury . . . ."

to pay workers' compensation benefits either to intervene in the employee's action or, in the event that the employee fails to prosecute his claim, to bring an independent action against the alleged tortfeasor.[10] In either case, the rights of each party with respect to the other are set forth clearly, as is the proper disposition of any damages awarded in an action governed by § 31-293.[11] If the employer chooses not to intervene in an action brought by the employee, it still may recover a share of any damages in its capacity as a lienor.[12] In any event, the employer's recovery is limited to the amount of workers' compensation benefits that it has paid or has

[10] General Statutes § 31-293 (a) provides in relevant part: "[A]ny employer or the custodian of the Second Injury Fund, having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. . . ."

[11] General Statutes § 31-293 (a) provides in relevant part: "If the employee, the employer or the custodian of the Second Injury Fund brings an action against such person, he shall immediately notify the others . . . of the action . . . and the others may join as parties plaintiff in the action within thirty days after such notification, and, if the others fail to join as parties plaintiff, their right of action against such person shall abate. . . . If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including [attorney's] fees, incurred by the employee in effecting the recovery. . . ."

[12] General Statutes § 31-293 (a) provides in relevant part: "Notwithstanding the provisions of this subsection, when any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury and the injured employee has received compensation for the injury from such employer, its workers' compensation insurance carrier or the Second Injury Fund pursuant to the provisions of this chapter, the employer, insurance carrier or Second Injury Fund shall have a lien upon any judgment received by the employee against the party or any settlement received by the employee from the party, provided the employer, insurance carrier or Second Injury Fund shall give written notice of the lien to the party prior to such judgment or settlement."

become obligated to pay as a result of the tortfeasor's alleged negligence or malfeasance.[13]

Finally, the rights of each party are protected by the following critical provision: "No compromise with the [alleged tortfeasor] by either the employer or the employee shall be binding upon or affect the rights of the other, unless assented to by him." General Statutes § 31-293 (a). This provision protects each party, whether the intervening employer or the real party in interest, i.e., the injured employee, by permitting the nonsettling or nonassenting party to retain all of its rights under the statute despite any unilateral settlement by the other party with the alleged tortfeasor.[14] In other words, if the employee chooses to settle his personal injury claim against the tortfeasor without the assent of the employer, the employer's right to recover on its lien and to pursue an independent action against the tortfeasor to recover any deficiency on that lien is unaffected. This means, of course, that when the employee and the tortfeasor settle the matter for less than the amount of the lien, the tortfeasor must weigh the risk of further litigation and exposure to greater liability that may result from a settlement reached without the intervening employer's assent. Significantly, however, the statute does not provide a mechanism for the nonassenting party to challenge a settlement between the other party and the tortfeasor. See *Ski-*

---

[13] General Statutes § 31-293 (a) provides in relevant part: "For the purposes of this section, the claim of the employer shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of the injury. . . ."

[14] Contrary to the facile interpretation of the relevant language of § 31-293 (a) that Manafort urges in its brief, our interpretation of this language leads to the conclusion that it in no way *requires* the assent of the other party before a valid settlement can be reached. In fact, on its face, it would seem to allow either party to settle without the acquiescence or even the knowledge of the other party.

*tromo* v. *Meriden Yellow Cab Co.*, 204 Conn. 485, 489, 528 A.2d 826 (1987) ("[the intervening plaintiff's] sole means to assert any right against the plaintiff's third party recovery [is] by way of the procedure set forth in § 31-293").

Section 31-293 (a) thus strives to balance and protect the interests of all the parties involved in a third party workers' compensation action. "We have repeatedly observed that our [Workers' Compensation Act, § 31-293 in particular] represents a complex and comprehensive statutory scheme balancing the rights and claims of the employer and the employee arising out of work-related personal injuries." *Durniak* v. *August Winter & Sons, Inc.*, 222 Conn. 775, 781, 610 A.2d 1277 (1992). Both the employer, who is obligated to pay workers' compensation, and the injured employee have an independent right to bring an action against a third party who allegedly is liable for the injury. "By allowing either an employer or an employee to bring an action, the law seeks to vindicate both the employee's interest in receiving the full scope of tort damages that remain uncompensated by a workers' compensation award and the employer's interest in being reimbursed for payments made because of the third party's malfeasance." *Skitromo* v. *Meriden Yellow Cab Co.*, supra, 204 Conn. 488. As we previously noted, the employee's right to recover damages from the tortfeasor is not limited by the statute but is subject to a judgment lien that can be asserted by the employer to recover "any amount that he has paid or has become obligated to pay as compensation to the injured employee" as a result of the tortfeasor's negligence. General Statutes § 31-293 (a). As we also have noted, the employer may proceed independently if the employee does not institute an action or may intervene as a party plaintiff in the employee's action.[15]

---

[15] We note that the *only* apparent reason for allowing the employer to intervene in the employee's action is to protect the employer's rights in the

Manafort's rights in this case are defined entirely by § 31-293 (a). See *Durniak* v. *August Winter & Sons, Inc.*, supra, 222 Conn. 782 ("an employer's right to obtain reimbursement from a third party tortfeasor is a statutory claim that is derived *in its entirety* from § 31-293 (a)" [emphasis added]). There is no common-law counterpart to an employer's statutory cause of action under § 31-293 (a). Id. Thus, in order to claim standing to challenge the allocation of the proceeds of the settlement between the plaintiffs and the defendant, Manafort must show that it has suffered statutory aggrievement. In other words, Manafort must demonstrate that the allocation of the settlement proceeds caused an "injury to an interest protected by [§ 31-293 (a)]." (Internal quotation marks omitted.) *Pond View, LLC* v. *Planning & Zoning Commission*, supra, 288 Conn. 156.

We conclude that § 31-293 (a) does not confer standing on an employer seeking to challenge the allocation of the proceeds of a settlement reached between its injured employee and the tortfeasor. Indeed, the statute protects employers from unilateral settlement agreements by preserving their rights in the face of such agreements and by providing that they cannot be bound by them absent their assent. Section 31-293 does not, however, allow an employer to interfere with a settlement reached between its employee and the tortfeasor,

event of a settlement. In the absence of a settlement, the employer's rights are completely protected by its judgment lien and its ability to bring an independent cause of action when the employee declines to prosecute his claim. If, for instance, under circumstances similar to those in the present case, the tortfeasor sought to settle the case with the employee and the employee's spouse for considerably less than the employer's potential workers' compensation liability, the employer effectively would be deprived of his right to recover on the lien if it could not pursue a separate cause of action against the tortfeasor.

nor does it provide courts with the authority to dictate the appropriate terms of such a settlement.[16]

We fail to discern, and Manafort has offered no explanation of, what statutory right has been impinged on by the settlement between the plaintiffs and the defendant. Section 31-293 explicitly contemplates the possibility that such a settlement can occur, and declares, in response, that the settlement "shall [not] be binding upon or affect the rights of the other [party], unless assented to by him." General Statutes § 31-293 (a). Therein lies the crux of the problem: Manafort simply cannot be aggrieved by a settlement to which it is not bound, and which does not interfere with its rights in the absence of its consent. As we noted previously, the only rights that Manafort enjoys under this scheme are the right to impose a lien on any judgment or settlement, up to the amount of its workers' compensation liability, and the right to bring an independent cause of action against the defendant through which it can recover workers' compensation payments that it has paid or has become obligated to pay as a result of the defendant's alleged negligence. In the absence of any voluntary relinquishment of these rights by Manafort, the settlement between the plaintiffs and the defendant did not affect Manafort's rights, and, therefore, Manafort has failed to demonstrate the requisite aggrievement to establish standing.[17]

---

[16] Indeed, it is clear that § 31-293 contains no provision authorizing the remedy that Manafort seeks in this appeal, i.e., a new hearing regarding the reasonableness of the allocation of the proceeds arising from the plaintiffs' settlement agreement. In fact, granting such relief would appear to violate Soracco's explicit statutory right to settle with the tortfeasor without the assent of his employer. Such a remedy also would implicate the recovery of Soracco's spouse for her loss of consortium claim, with which Manafort has no right, statutory or otherwise, to interfere.

[17] We recognize that the doctrines of final judgment and ripeness are also implicated in this appeal and likely provide an independent basis for our ultimate conclusion regarding the lack of subject matter jurisdiction in this case. Because we decide the case on the basis of standing, however, we need not reach these other issues.

Ultimately, this appeal represents nothing more than a challenge to the voluntary and consensual division of the proceeds of a settlement reached by the plaintiffs and the defendant. The employer's cause of action under these circumstances is a creature of statute, namely, § 31-293. Its rights and remedies are fully and plainly set forth in that statute, which clearly indicates that all of these rights are left intact in the face of a settlement to which the intervening employer does not assent. Because we conclude that none of Manafort's statutory interests was affected by the settlement between the plaintiffs and the defendant, we further conclude that it lacked standing to challenge the terms of that settlement, and, therefore, the trial court was without jurisdiction to consider Manafort's challenge to the allocation of the proceeds of that settlement.[18]

The order is vacated.

In this opinion the other justices concurred.

---

[18] In conducting this hearing, which is not authorized by the statute, we surmise that Judge Holzberg was attempting to accommodate Soracco and Manafort by mediating this final disputed issue. Our surmise is supported by Judge Holzberg's expression of surprise when he learned of Manafort's intention to appeal his determination and order: "[M]y recollection . . . is that this was submitted to me by the agreement of the parties to make such a finding . . . . I was operating under the assumption that the parties were looking for an allocation and frankly would abide by whatever was said." Judge Holzberg's surprise is understandable when one considers that the plaintiffs' complaint had been withdrawn prior to the hearing on the reasonableness of the apportionment.