## ELISE PIQUET *v.* TOWN OF CHESTER ET AL.
### (AC 30440)

Flynn, C. J., and Robinson and Borden, Js.*

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 7—officially released October 19, 2010

*William F. Gallagher*, with whom, on the brief, were *Hugh D. Hughes* and *Mark A. Balaban*, for the appellant (plaintiff).

*John S. Bennet*, for the appellees (defendants).

ROBINSON, J. The plaintiff, Elise Piquet, appeals from the judgment of the trial court rendered in favor of the defendants, the town of Chester and its planning and zoning commission, granting their motion for summary judgment. Specifically, the plaintiff claims that the court improperly (1) required her to bear the burden of proof in providing evidence that there was a genuine issue of material fact in opposition to the defendants' motion for summary judgment and (2) found that the Chester zoning regulations prohibit private burials on residential property. We conclude that the trial court lacked subject matter jurisdiction and, accordingly, reverse the judgment.

The record reveals the following facts and procedural history. The plaintiff is the owner of property at 28 South Wig Hill Road in Chester. The plaintiff resided with her husband, Christopher J. Shaboe Doll, at their residence on the property for fourteen years prior to his death on October 13, 2004. The plaintiff alleges that she and her husband wanted to be buried side by side in Chester, and, accordingly, on October 24, 2004, the plaintiff interred her husband's remains in the backyard of her property under the supervision of a licensed funeral director. On June 8, 2005, Chester's zoning compliance officer[1] issued a cease and desist order with regard to the burial for violation of the Chester zoning regulations. On August 12, 2005, the plaintiff filed an appeal from the cease and desist order with the Chester

---

[1] "The enforcement officer acts as the agent of the [planning and zoning] commission. . . . [T]he commission is authorized by statute to provide how its regulations are to be enforced . . . . The Supreme Court has referred to the statutory scheme as one that delegates authority from the commission to the enforcement officer." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 513. In the present case, the zoning compliance officer was acting on behalf of the defendant planning and zoning commission of the town of Chester.

zoning board of appeals, seeking a variance. On or about September 16, 2005, the zoning compliance officer specifically informed the plaintiff that the burial was not permitted as a principal use or a special principal use in the residential district where the plaintiff's property was located, pursuant to § 40A of the Chester zoning regulations. The zoning compliance officer, however, withdrew the cease and desist order for the purpose of allowing the plaintiff time to remedy the violation. On October 15, 2005, the plaintiff notified the zoning board of appeals that she was withdrawing her objection to the cease and desist order, without prejudice.

On October 26, 2007, the plaintiff commenced an action in the trial court, requesting a judgment declaring that she has the right to use her property for the interment of her husband and, upon her death, for her interment as well. On April 28, 2008, the defendants filed a motion for summary judgment. On September 30, 2008, the court granted the motion in a memorandum of decision and rendered judgment in favor of the defendants. This appeal followed.

Before reaching the merits of the plaintiff's appeal, we must first determine whether the court had subject matter jurisdiction over her action for a declaratory judgment.[2] This issue is resolved by an analysis of whether the plaintiff properly exhausted her administrative remedies.[3] The plaintiff, in her supplemental

[2] "[C]oncerns regarding subject matter jurisdiction implicate the court's fundamental authority and may properly be raised and decided by the court sua sponte." Soracco v. Williams Scotsman, Inc., 292 Conn. 86, 91, 971 A.2d 1 (2009). In the present case, this court, sua sponte, ordered the parties to submit supplemental briefs on the issue of whether the plaintiff properly exhausted her administrative remedies, thus giving the trial court subject matter jurisdiction over her action for a declaratory judgment.

[3] On May 25, 2010, this court ordered the parties to file supplemental briefs on the issues of whether the plaintiff exhausted her administrative remedies and whether the trial court properly had subject matter jurisdiction to issue a declaratory judgment. In their brief, the defendants argued that the plaintiff did not exhaust her administrative remedies by appealing to

brief, argues that she is contesting the validity, rather than the interpretation, of Chester's zoning regulations and that such a determination is excluded from the doctrine of administrative remedy exhaustion. Although the plaintiff asserts in her supplemental brief that a declaratory action is the proper forum in which to challenge the validity of an ordinance or regulation, as was stated in her appellate brief, "[t]he only issue before the [trial] court was the clarity of the Chester zoning regulations on the issue of accessory use." The issue clearly before the court was the zoning compliance officer's interpretation of the regulations concerning accessory use, not the validity of the regulations concerning accessory use. This court is concerned with substance, not labels, and for that reason relabeling an argument does not change the legal issue any more than baking shoes in an oven changes them into bread. See *State* v. *Gooch*, 186 Conn. 17, 18, 438 A.2d 867 (1982). Further, the plaintiff argues that the defendants already have expressed that her private burial was prohibited by the town's zoning regulations, making any further action to the zoning enforcement officer or the zoning board of appeals futile. Finally, she argues that only the trial court can grant her the necessary relief of an injunction against Chester and all of its agencies. We disagree with the plaintiff's arguments and conclude that she has failed to exhaust her administrative remedies.

"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . This requirement reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and

the zoning board of appeals and, therefore, the trial court lacked subject matter jurisdiction.

adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment. . . . We have recognized, however, certain limited exceptions to the exhaustion requirement. Such exceptions include . . . where local procedures cannot effectively, conveniently or directly determine whether the plaintiff is entitled to the relief claimed." (Citations omitted; internal quotation marks omitted.) *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 425, 655 A.2d 1121 (1995). "[W]e have recognized such exceptions only infrequently and only for narrowly defined purposes . . . such as when recourse to the administrative remedy would be futile or inadequate." (Citations omitted; internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 565, 821 A.2d 725 (2003).

In the present case, in June, 2005, the plaintiff was issued a cease and desist order by the zoning compliance officer, in response to a complaint from the department of public health. In response, the plaintiff filed an appeal to the zoning board of appeals for a variance from the cease and desist order. On September 16, 2005, the zoning compliance officer wrote a letter to the plaintiff, affirming her belief that the plaintiff was in violation of the zoning regulations, but notifying the plaintiff that she was "withdrawing the June 8, 2005 cease [and] desist order" to allow the plaintiff time to remedy the situation, "whether by [the plaintiff's] pending application for a [v]ariance or otherwise . . . ." Subsequently, in October, 2005, the plaintiff withdrew her appeal of the cease and desist order and her variance request without prejudice. Thereafter, the zoning compliance officer did not resume any action against the plaintiff.

Section 140G of the Chester zoning regulations concerns the powers and duties of the zoning board of appeals. Section 140G.1 provides that the zoning board

of appeals shall have the power "[t]o hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the [z]oning [c]ompliance [o]fficer." The regulations do not set forth a specific definition for what constitutes a decision from the zoning compliance officer. In the letter dated September 16, 2005, the compliance officer reiterated the basis for her finding that the zoning regulations do not permit private burials in the residential district in which the plaintiff's property is located. The zoning compliance officer then declared that she was not pursuing legal action based on her interpretation of the zoning regulations. She did not, however, abandon her interpretation but, rather, declared her intention, at least temporarily, to suspend taking action based on that interpretation. The September 16, 2005 letter was a decision by the zoning compliance officer from which the plaintiff could have appealed to the zoning board of appeals, or she could have amended her then pending appeal to include the September 16, 2005 letter.[4] Accordingly, we conclude that the trial court did not have subject matter jurisdiction over the plaintiff's action for a declaratory judgment.

The judgment is reversed and the case is remanded with direction to dismiss the action.

In this opinion FLYNN, C. J., concurred.

FLYNN, C. J., concurring. I concur fully in the majority opinion. I agree with the plaintiff, Elise Piquet, that the zoning commission's legal argument distilled down

---

[4] We note that although the plaintiff argues the doctrine of futility in her supplemental brief, reasoning that "[t]he defendants have stated quite clearly that private burial grounds are not allowed anywhere [within] Chester . . . as a matter of law." The zoning board of appeals was not a named defendant in the action. There is nothing in the record that indicates what the board's interpretation of the subject zoning issue would be or that an appeal to the board of appeals would be futile.

to its essence, is that the commission can grant no relief to the plaintiff because its zoning regulation is permissive. I also agree that accessory uses are not defined by the Chester zoning regulations. However, § 20 of the regulations describes a lot as an area capable of being occupied by one principal building "and *the accessory buildings or uses customarily incident to it.*" (Emphasis added.) I further agree with the plaintiff that there was a complete absence of any affidavit or other documentary evidence from the defendants as to what was "customarily incident" attached to the commission's motion for summary judgment filed by the commission and the defendant town of Chester. Without such evidence, there was nothing that the plaintiff had an obligation to rebut.

Nevertheless, because our review is plenary and subject matter jurisdiction may be raised at any time; see *Ross* v. *Zoning Board of Appeals*, 118 Conn. App. 90, 96, 983 A.2d 11 (2009) (court may act on own motion and should do so when lack of jurisdiction is involved); I therefore concur that the judgment of the trial court should be reversed and the case remanded with direction to dismiss the action because the plaintiff had administrative remedies, to which she did not avail herself.

When the plaintiff apparently inquired of the state department of public health (department) as to what the requirements were for a burial on private property, the department responded in a letter dated January 4, 2005, inter alia, that pursuant to General Statutes § 19a-313, a burial or entombment is prohibited except in an "established cemetery controlled by a municipality, ecclesiastical society or cemetery association, or in a private burying ground or structure approved by the . . . [d]epartment . . . ." The letter also stated that the plaintiff needed to verify with her local planning and zoning commission whether there were local

requirements that would prohibit the use of her property as a burying ground.

On June 8, 2005, the zoning compliance officer issued a cease and desist order to the plaintiff, specifically stating that the department had made a complaint to the zoning office. The cease and desist order stated that private burials were not permitted on the plaintiff's property, and it ordered the plaintiff to comply with the zoning regulations within thirty days. The plaintiff then appealed from that order to the Chester zoning board of appeals. Because of apparent public outcry, however, the zoning enforcement officer withdrew the order, and the plaintiff then withdrew her appeal without prejudice.

Thereafter, the plaintiff filed a declaratory judgment action in the Superior Court, seeking a twofold declaration that she had a right to keep her husband buried on the property and that she had a right to be buried there herself after her death. She claimed that these private burials were accessory uses under the Chester zoning regulations. The commission, however, has not ruled on whether the plaintiff's burial requests are permissible as accessory uses under its regulations. The town apparently has no interest in disinterring the plaintiff's husband, as evidence by its withdrawal of the cease and desist order, and, to the extent that she, understandably, wants to be buried next to her husband on her property, she can seek zoning approval for that purpose. Although the plaintiff argues that making such a request would be futile because the zoning compliance officer already has told her that such uses are not permitted, a zoning compliance officer's opinion, whether official or unofficial, does not end the administrative remedies available to the plaintiff. See General Statutes §§ 8-6 and 8-7.

As explained in *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 821 A.2d 725 (2003): "The [exhaustion] doctrine is

applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. . . . [W]e have recognized such exceptions only infrequently and only for narrowly defined purposes . . . *Polymer Resources, Ltd.* v. *Keeney*, 227 Conn. 545, 561, 630 A.2d 1304 (1993); *Pet* v. *Dept. of Health Services*, [207 Conn. 346, 353, 542 A.2d 672 (1988)]; such as when recourse to the administrative remedy would be futile or inadequate. . . . *Fish Unlimited* v. *Northeast Utilities Services Co.*, [254 Conn. 1, 13, 756 A.2d 262 (2000), overruled in part on other grounds by *Waterbury* v. *Washington*, 260 Conn. 506, 545, 800 A.2d 1102 (2002)]. Because of the policy behind the exhaustion doctrine, we construe these exceptions narrowly. See, e.g., *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 429, 655 A.2d 1121 (1995) (actual bias, rather than mere potential bias, of administrative body renders resort to administrative remedies futile); *Polymer Resources, Ltd.* v. *Keeney*, supra, 561 (mere conclusory assertion that agency will not reconsider decision does not excuse compliance, on basis of futility, with exhaustion requirement); *Housing Authority* v. *Papandrea*, [222 Conn. 414, 432, 610 A.2d 637 (1992)] (fact that commissioner of housing previously indicated how he would decide plaintiff's challenge to voucher program did not excuse compliance, on ground of futility, with exhaustion requirement)." (Internal quotation marks omitted.) *Stepney, LLC* v. *Fairfield*, supra, 565.

In the present case, the plaintiff cannot circumvent the administrative process simply because she believes that she will lose at the local level. She had a right to request the local building official to approve her burial site, and if the official decided not to do so, to appeal from that decision pursuant to General Statutes §§ 8-7 and 8-8 to the zoning board of appeals, which has never passed on the issue and to file an administrative appeal

to the Superior Court if the board did not grant relief. If the zoning board of appeals decided that it was an accessory use, then she would have no need to resort to the courts. Declaratory judgment relief was not appropriate at this stage of the case. Accordingly, I agree with the majority opinion to reverse the judgment and remand the case with direction to dismiss the declaratory judgment action.

Finally, I state my agreement with the majority author's decision not to declare judicially as a matter of public policy that interment of persons in private burial plots can never be an accessory use of residential property in this state, as is stated in the dissenting opinion.

At the outset, I note that by enacting General Statutes § 8-2, the General Assembly committed to "the zoning commission" power to regulate within "each such municipality" the "use" of "land" for "residence or other purposes."

The zoning authority of the town of Westport found that private burial plots in a residential zone were an accessory use to residential property owned by one of the nation's prominent families in New York's financial world, and Judge Cocco of the Superior Court agreed with that finding in *300 PRW Associates* v. *Planning & Zoning Commission,* Superior Court, judicial district of Fairfield, Docket No. CV-91-0288554-S (September 21, 1992) (7 Conn. L. Rptr. 400).[1] What accessory uses

---

[1] In his memorandum of decision, Judge Cocco referenced the commission testimony of Judith Nelson, the director of the Westport/Weston health district, who had stated: "Although this [application for a private cemetery] may not be a common occurrence in Westport, Connecticut, this is a common occurrence in the [s]tate of Connecticut. When I was approached by the family over a year ago about the possibility of a private cemetery on this site, I contacted the [s]tate [h]ealth [d]epartment. There really is a very straight forward series of conditions that [the health department] overlay onto anyone requesting a private cemetery . . . [a]nd from all aspects of public health, I would certainly support this application."

customarily are allowed in any given town or city is something best left to each municipality to decide on the basis of the authority granted under § 8-2, other provisions of title 8, chapter 124, of the General Statutes and pursuant to its own regulations. For example, in *Lawrence* v. *Zoning Board of Appeals*, 158 Conn. 509, 264 A.2d 552 (1969), our Supreme Court stated "whether the raising of chickens and goats was an accessory use—one which was subordinate and customarily incidental to property located in the center of town and used for residential purposes . . . [was] a determination [that was] peculiarly within the knowledge of the local board." Id., 514. The court also explained that "what is meant by accessory use . . . may often present and depend upon questions of fact, or involve or be open to a legal exercise of discretion by the administrative officials and the board of appeals." (Internal quotation marks omitted.) Id., 513.

For all of these reasons I concur in the majority opinion.

BORDEN, J., dissenting. I disagree with the majority's conclusion that the trial court lacked subject matter jurisdiction because the plaintiff, Elise Piquet, had not exhausted her administrative remedies. I conclude, to the contrary, that there was no viable administrative remedy to exhaust. I also conclude, however, that the judgment should be affirmed, on the ground that the plaintiff's claim, namely, that burial of her husband on her property[1] is an accessory use of the property, is flawed as a matter of law. I therefore dissent from the majority's direction to remand the case for its dismissal and would affirm the judgment on the merits.

---

[1] The record discloses that the plaintiff is the life tenant of the property involved and that the town of Chester Land Trust, Inc., is the remainderman. The land trust did not challenge the zoning compliance officer's cease and desist order in any way and is not involved in this appeal.

I

I turn, first, to the majority's conclusion that the trial court lacked subject matter jurisdiction because the plaintiff had not exhausted her administrative remedies. The basis for this conclusion is that the September 16, 2005 letter from the zoning compliance officer of the defendant town of Chester withdrawing her cease and desist order was a "decision," within the meaning of § 140G.1 of the zoning regulations of the town of Chester, by that officer, from which the plaintiff could have appealed to the Chester zoning board of appeals in order to seek a different legal interpretation of the applicable zoning regulations. In my view, that is too slim a reed to support the majority's conclusion.

I first note that the issue of subject matter jurisdiction was raised sua sponte by this court after oral argument; neither defendant, namely, the town or its planning and zoning commission, had raised such a claim, either in the trial court or in this court. Although, of course, that cannot be determinative of such a question of subject matter jurisdiction, it does suggest a certain frailty in the majority's conclusion when, apparently, those officials who have the responsibility of defending the town's interpretation of the zoning regulations did not think that the plaintiff had failed to exhaust her administrative remedies.

The undisputed relevant facts are as follows. On June 8, 2005, the zoning compliance officer issued her cease and desist order, the purpose of which was to require the plaintiff to disinter her husband's remains from her property. On August 12, 2005, the plaintiff filed her appeal to the zoning board of appeals from that order, seeking "an appeal of the . . . [c]ease and [d]esist [o]rder and a variance regarding private burial" on her property. By letter of September 16, 2005, the zoning compliance officer, after reiterating her position that

the zoning regulations did not provide for a private burial on residential property, informed the plaintiff as follows: "I would prefer that the legal issues relating to your husband's burial on Chester Land Trust property be resolved by the real parties in interest who are yourself, the Chester Land Trust and the Connecticut Department of [Public] Health.

"In order to allow you, the Land Trust and the Department of [Public] Health sufficient time to remedy the situation, whether by your pending application for a Variance or otherwise, I am hereby WITHDRAWING the June 8, 2005 Cease and Desist Order. I am also WITHDRAWING the June 8, 2005 Cease [and] Desist order issued to the Chester Land Trust.

"I must emphasize that the purpose of the Withdrawal is to give the parties time to remedy the violation. If the violation is not remedied, it *may be necessary for me to revisit the matter* and determine *what, if any, further action I would need to take* to appropriately enforce the Chester Zoning Regulations." (Emphasis added.)

Section 140G.1 of the zoning regulations gives the zoning board of appeals the power to "hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the [z]oning [c]ompliance [o]fficer . . . ." The letter of withdrawal cannot reasonably be considered a "decision" by the zoning compliance officer. Read sensibly, it was not a "decision" by that officer; it was, instead, at the most, the postponement or deferral of a decision.

As a matter of statutory interpretation, the principles of which apply to zoning regulations; *Hasychak* v. *Zoning Board of Appeals*, 296 Conn. 434, 442, 994 A.2d 1270 (2010); the terms "order, requirement or decision" must be read together. See *Director of Health Affairs Policy Planning* v. *Freedom of Information Commission*, 293

Conn. 164, 171, 977 A.2d 148 (2009). Both "order" and "requirement" strongly suggest an element of command and definiteness that is amenable to the filing of an appeal to the zoning board of appeals, from which the recipient can reasonably understand, after reading the zoning regulations, that her next step is to file such an appeal. Thus, "order" and "requirement" strongly suggest a scenario in which the zoning compliance officer has told the property owner what she must do, and in such a way that she would reasonably understand, from reading the zoning regulations, that her next step is to appeal from that order or requirement to the zoning board of appeals. Indeed, that is precisely what the officer's cease and desist order did. The word "decision," therefore, should be read in the same vein. It should be read as implying an element of command and definiteness that is amenable to the filing of an appeal with the zoning board of appeals and be framed in such a way that the property owner can reasonably understand, from reading the zoning regulations, that her next step is to file such an appeal. The zoning compliance officer's letter of September 16, 2005, utterly fails this test.

First, it was, by its own terms, a *withdrawal* of her prior order, leaving that order wholly without legal effect. Second, it made clear that its purpose was to give time to the plaintiff, as well as the land trust and the department of public health, neither of which were parties to the plaintiff's appeal to the zoning board, "to remedy the violation." Third, the language used by the zoning compliance officer in notifying the plaintiff of her withdrawal of the cease and desist order was at best ambiguous. She urged the parties—whom she identified as the plaintiff, the land trust and the department of public health—to "resolve" the matter; she did not specifically tell the plaintiff to disinter her husband's remains. This left open, at least, the possibility of a

resolution that would not involve disinterment. She then informed the plaintiff that, if the matter were not resolved, *"it may be necessary"* for her to revisit the matter, and then to "determine *what, if any,* further action" she would need to take. (Emphasis added.) In sum, this withdrawal of the cease and desist order, leaving that order without any legal effect, cannot reasonably be read as having the elements of command and definiteness suggested by the language "order, requirement or decision" of the zoning compliance officer. It was not a "decision" in any realistic sense; it was, instead, the postponement or deferral of a decision. Finally, it is unfair to the plaintiff to conclude that, having received this withdrawal notice and having read the zoning ordinances, she had been reasonably informed that she must then appeal to the zoning board of appeals from an ambiguous withdrawal of a no longer existing cease and desist order.

Thus, the plaintiff was left in a position in which the only administrative sanction that had been issued—the cease and desist order—had been specifically withdrawn, yet the public official with responsibility to enforce the zoning regulations had expressed her opinion that the plaintiff's burial of her husband's remains violated those regulations and had advised the plaintiff to proceed by seeking a variance from the zoning board of appeals "or otherwise . . . ." As I will explain, the variance route would have obviously been legally ineffective; therefore, the plaintiff took the only route available to her, namely, filing this declaratory judgment action. That was the "otherwise" that the zoning compliance officer had suggested. Given this unusual procedural posture of the zoning compliance officer, it is simply perverse, in my view, to throw the plaintiff out of court on the ground that she failed to exhaust her nonexistent administrative remedies.

Furthermore, it is clear that the zoning compliance officer's uninformed suggestion that the plaintiff seek a variance from the zoning board of appeals would have led the plaintiff into an exercise in futility. It is black letter administrative law that one need not exhaust an administrative remedy that would be futile. *Garcia* v. *Hartford*, 292 Conn. 334, 340, 972 A.2d 706 (2009); *Neiman* v. *Yale University*, 270 Conn. 244, 258–59, 851 A.2d 1165 (2004). It is equally black letter zoning law that a zoning variance must be based on some unavoidable obstacle created by the property and not on a personal preference of the property owner. *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 857, 670 A.2d 1271 (1996). The plaintiff's request for a variance to permit her to bury her husband's remains in her backyard would be the epitome of a personal preference and not an obstacle created by the property.

## II

Having concluded that the trial court had subject matter jurisdiction over the plaintiff's declaratory judgment action, I turn now to the dispositive issue of the plaintiff's appeal. The plaintiff claims that the burial of her husband's remains on her residential property can be considered an accessory use incidental to her principal residential use of the property and requests that we remand the case in order to give her an opportunity to prove such an accessory use, an opportunity that she claims the trial court improperly denied her. I reject this claim. I conclude that, as a matter of law, based on public policy, burying one's dead loved one in one's backyard (or front yard, for that matter) cannot ever be an accessory use of residential property in this state.

Section 20A of the Chester zoning regulations defines an accessory use as "[a]ny use which is attendant, subordinate and customarily incidental to the principal use of the same lot." Our case law defines it in similar

fashion. See, e.g., *Upjohn Co.* v. *Planning & Zoning Commission*, 224 Conn. 82, 89, 616 A.2d 786 (1992); *Lawrence* v. *Zoning Board of Appeals*, 158 Conn. 509, 511–13, 264 A.2d 552 (1969).

It may be so that in the seventeenth, eighteenth, nineteenth or even early twentieth centuries of this state's history, people incidentally and customarily buried their deceased loved ones on their private residential properties. I do not know if that be so. It cannot be so, however, in the twenty-first century, as a matter of public policy.

Our statutes are replete with regulation of funeral parlors, morticians and burial grounds. See, e.g., General Statutes § 19a-295 (ownership and management of burial grounds); General Statutes § 19a-310 (approval of vault or mausoleum by department of public health); General Statutes § 19a-313 (burials); General Statutes § 19a-320 (maintenance of crematories); General Statutes § 20-212 (care and disposal of bodies by embalmers); General Statutes § 20-220 (requirements for engaging in funeral directing); General Statutes § 20-222 (inspection of funeral parlors by department of public health); General Statutes § 20-230d (disposition of unclaimed cremated remains). The basis of this extensive statutory scheme is public health. It would be wholly contrary to this important public policy to permit private burials on private, residential property.

Furthermore, consider what would happen when the survivor, who has buried her deceased loved one on her residential property, either dies and the property must be sold, or she wants to sell or can no longer live there and must sell the property. Although *she* may have considered having her deceased husband, say, buried on the property as incidental to *her* use of the property, the buyer—if one can be found—would hardly harbor the same sentiment. Unlike some other incidental use—

such as, for example, a tool shed, which a new owner could simply take down if he did not want it—a buried dead body does not easily lend itself to such a solution.

"It is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom." (Internal quotation marks omitted.) *Gazo* v. *Stamford*, 255 Conn. 245, 266, 765 A.2d 505 (2001). The assertion of the plaintiff that she should have been given the opportunity to establish that burying her deceased husband on her private, residential property was an accessory use of the property violates that principle.

I would, therefore, affirm the summary judgment of the trial court in favor of the defendants.