## TOWN OF SOUTHBURY *v.* PATRICIA GONYEA ET AL.
### (SC 18524)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Harper, Js.

Argued April 26—officially released July 12, 2011

*Maureen E. Driscoll*, with whom was *Maribeth M. McGloin*, for the appellant (plaintiff).

*Keith S. McCabe*, for the appellees (defendants).

*Opinion*

NORCOTT, J. The plaintiff, the town of Southbury, appeals[1] from the trial court's grant of summary judgment in favor of the defendants, Patricia Gonyea and

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Joseph Gonyea, in this action filed by the plaintiff, pursuant to General Statutes § 31-293 (a),[2] to recover work-

[2] General Statutes § 31-293 (a) provides: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of the injured employee against such person, but the injured employee may proceed at law against such person to recover damages for the injury; and any employer or the custodian of the Second Injury Fund, having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such person to recover any amount that he has paid or has become obligated to pay as compensation to the injured employee. If the employee, the employer or the custodian of the Second Injury Fund brings an action against such person, he shall immediately notify the others, in writing, by personal presentation or by registered or certified mail, of the action and of the name of the court to which the writ is returnable, and the others may join as parties plaintiff in the action within thirty days after such notification, and, if the others fail to join as parties plaintiff, their right of action against such person shall abate. In any case in which an employee brings an action against a party other than an employer who failed to comply with the requirements of subsection (b) of section 31-284, in accordance with the provisions of this section, and the employer is a party defendant in the action, the employer may join as a party plaintiff in the action. The bringing of any action against an employer shall not constitute notice to the employer within the meaning of this section. If the employer and the employee join as parties plaintiff in the action and any damages are recovered, the damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of the recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting the recovery. The rendition of a judgment in favor of the employee or the employer against the party shall not terminate the employer's obligation to make further compensation which the commissioner thereafter deems payable to the injured employee. If the damages, after deducting the employee's expenses as provided in this subsection, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. No compromise with the person by either the employer or the employee shall be binding upon or affect the rights of the other, unless assented to by him. For the purposes of this section, the claim of the employer shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of the injury. The word 'compensation',

ers' compensation benefits that, pursuant to the Workers' Compensation Act (act), General Statutes § 31-275 et seq., it has paid or will become obligated to pay to Thomas Gugliotti, an employee of the plaintiff who, during the course of his employment, was injured in a car accident with the defendants. On appeal, the plaintiff claims that the trial court improperly concluded that the plaintiff had assented to a settlement agreement between Gugliotti and the defendants (settlement), thereby barring it from pursuing its claim under § 31-293 (a) against the defendants. Because we agree with the plaintiff that there is a genuine issue of material fact as to whether it had assented to the settlement, we reverse the judgment of the trial court.

The record, viewed in the light most favorable to the nonmoving plaintiff for purposes of reviewing the trial

as used in this section, shall be construed to include incapacity payments to an injured employee, payments to the dependents of a deceased employee, sums paid out for surgical, medical and hospital services to an injured employee, the burial fee provided by subdivision (1) of subsection (a) of section 31-306, payments made under the provisions of sections 31-312 and 31-313, and payments made under the provisions of section 31-284b in the case of an action brought under this section by the employer or an action brought under this section by the employee in which the employee has alleged and been awarded such payments as damages. Each employee who brings an action against a party in accordance with the provisions of this subsection shall include in his complaint (A) the amount of any compensation paid by the employer or the Second Injury Fund on account of the injury which is the subject of the suit and (B) the amount equal to the present worth of any probable future payments which the employer or the Second Injury Fund has, by award, become obligated to pay on account of the injury. Notwithstanding the provisions of this subsection, when any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in a person other than an employer who has complied with the requirements of subsection (b) of section 31-284, a legal liability to pay damages for the injury and the injured employee has received compensation for the injury from such employer, its workers' compensation insurance carrier or the Second Injury Fund pursuant to the provisions of this chapter, the employer, insurance carrier or Second Injury Fund shall have a lien upon any judgment received by the employee against the party or any settlement received by the employee from the party, provided the employer, insurance carrier or Second Injury Fund shall give written notice of the lien to the party prior to such judgment or settlement."

court's grant of summary judgment, reveals the following facts and procedural history. On January 16, 2006, Gugliotti, a police officer employed by the plaintiff, was involved in a car accident with Patricia Gonyea, who was operating a car owned by Joseph Gonyea. As a result of the accident, Gugliotti suffered multiple injuries and underwent several medical procedures; he subsequently applied for and received workers' compensation benefits from the plaintiff pursuant to the act. Gugliotti also made a claim against the defendants, which, on December 5, 2007, was settled for the defendants' insurance policy limit of $100,000. Before that settlement was executed, the plaintiff perfected its statutory lien rights, under § 31-293 (a), by filing lien letters with the defendants. Subsequently, on February 12, 2008, Gugliotti forwarded to the plaintiff a check for $66,624.28, which represented the net proceeds he received from the settlement.

Thereafter, the plaintiff commenced the present action, under § 31-293 (a), to recover past and future workers' compensation benefits it had paid, or would become obligated to pay, as a result of Gugliotti's injuries. The defendants then moved to implead Gugliotti as a third party defendant and, subsequently, filed a third party complaint against Gugliotti. The trial court, *Roche, J.,* subsequently denied the cross motions for summary judgment filed by the defendants and Gugliotti in the third party action.[3] Then, on February 2, 2009, the defendants moved for summary judgment in this action, contending that the plaintiff had assented to the settlement between Gugliotti and the defendants and,

---

[3] The defendants had argued in their third party summary judgment motion that Gugliotti, in the settlement, had released the defendants from all future liability. Gugliotti contended, inter alia, that he had complied with the provisions of the settlement and denied liability on the plaintiff's action. Finding a question of fact relative to the parties' intent in drafting the settlement, the trial court, *Roche, J.,* denied both motions for summary judgment in the third party action. That decision is not at issue in this appeal.

thus, was barred from pursuing this action. At a hearing on June 1, 2009, the trial court, *Sheedy, J.*, granted the defendants' motion over the plaintiff's objection, concluding that there was no genuine issue of material fact because the defendants had demonstrated through written correspondence between the plaintiff's counsel and Gugliotti's counsel that the plaintiff had assented to the settlement, and, therefore, the defendants were entitled to judgment as a matter of law. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the plaintiff argues that the trial court improperly concluded that it had assented to the settlement between Gugliotti and the defendants. Specifically, the plaintiff contends that there is a genuine issue of material fact as to whether it had assented to the settlement because: (1) assent, in the context of § 31-293, "is a waiver of future legal rights to bring an independent civil action," and there was no evidence that the plaintiff had waived its statutory right to pursue this action; and (2) the reimbursement received by the plaintiff from the settlement was statutorily authorized and did not operate as assent to the settlement. In response, the defendants contend that the trial court properly concluded that the plaintiff had assented to the compromise, relying on the written communications between the parties prior to the settlement's execution. We agree with the plaintiff and conclude that there is a genuine issue of material fact as to whether the plaintiff assented to the settlement.

We first note that it is well settled that we engage in plenary review of a trial court's grant of a motion for summary judgment under Practice Book § 17-49. See, e.g., *Weiss* v. *Weiss*, 297 Conn. 446, 458, 998 A.2d 766 (2010).

We next turn to the operative statute, § 31-293, which we recently considered in *Soracco* v. *Williams Scots-*

*man, Inc.*, 292 Conn. 86, 971 A.2d 1 (2009). In *Soracco*, we concluded that an employer, who did not assent to the settlement agreement between the aggrieved plaintiffs, a married couple, and the defendant tortfeasor, nevertheless was barred from challenging the equal apportionment of the settlement proceeds between the plaintiff spouses. Id., 89–90, 96–97. Although there was no dispute over the employer's lack of assent in *Soracco*, we examined that portion of the statute in depth: "Section 31-293 is a detailed scheme governing the parties' rights in third party workers' compensation scenarios. Its primary effect is to provide a mechanism for an injured employee to assert a claim against the party allegedly liable for his injury, notwithstanding the employee's statutory claim for workers' compensation. The statute also allows an employer who is obligated to pay workers' compensation benefits either to intervene in the employee's action or, in the event that the employee fails to prosecute his claim, to bring an independent action against the alleged tortfeasor. In either case, the rights of each party with respect to the other are set forth clearly, as is the proper disposition of any damages awarded in an action governed by § 31-293. If the employer chooses not to intervene in an action brought by the employee, it still may recover a share of any damages in its capacity as a lienor. In any event, the employer's recovery is limited to the amount of workers' compensation benefits that it has paid or has become obligated to pay as a result of the tortfeasor's alleged negligence or malfeasance.

"Finally, the rights of each party are protected by the following critical provision: *'No compromise with the [alleged tortfeasor] by either the employer or the employee shall be binding upon or affect the rights of the other, unless assented to by him.'* General Statutes § 31-293 (a). This provision protects each party, whether the intervening employer or the real party in

interest, i.e., the injured employee, by permitting the
nonsettling or nonassenting party to retain all of its
rights under the statute despite any unilateral settle-
ment by the other party with the alleged tortfeasor.[4]
In other words, if the employee chooses to settle his
personal injury claim against the tortfeasor without the
assent of the employer, the employer's right to recover
on its lien and to pursue an independent action against
the tortfeasor to recover any deficiency on that lien
is unaffected. This means, of course, that when the
employee and the tortfeasor settle the matter for less
than the amount of the lien, the tortfeasor must weigh
the risk of further litigation and exposure to greater
liability that may result from a settlement reached with-
out the intervening employer's assent. Significantly,
however, the statute does not provide a mechanism
for the nonassenting party to challenge a settlement
between the other party and the tortfeasor." (Emphasis
added.) *Soracco* v. *Williams Scotsman, Inc.*, supra, 292
Conn. 92–94.

Thus, resolution of the factual question of assent to
the settlement is critical to the determination of an
employer's rights under § 31-293 (a), and, specifically
here, whether the plaintiff may pursue its own indepen-
dent action against the defendants. As we noted in
*Soracco*, assent to the settlement operates as a "volun-
tary relinquishment" of the employer's rights, namely,
"the right to impose a lien on any judgment or settlement,
up to the amount of its workers' compensation liability,
and the right to bring an independent cause of action
against the defendant through which it can recover
workers' compensation payments that it has paid or has

[4] "[O]ur interpretation of this language leads to the conclusion that it in
no way *requires* the assent of the other party before a valid settlement can
be reached. In fact, on its face, it would seem to allow either party to
settle without the acquiescence or even the knowledge of the other party."
(Emphasis in original.) *Soracco* v. *Williams Scotsman, Inc.*, supra, 292 Conn.
94 n.14.

become obligated to pay as a result of the defendant's alleged negligence." Id., 97. In the present case, the plaintiff maintains that there is no evidence demonstrating that it had voluntarily relinquished these legal rights. The defendants contend, however, that the written correspondence between the plaintiff's counsel, Kevin J. Maher, and counsel for Gugliotti, Eric R. Brown, establishes that the plaintiff assented to the settlement. Accordingly, we examine those communications to determine if the trial court properly concluded that there was no genuine issue of material fact as to whether the plaintiff had assented to the settlement.

The following additional facts are relevant to the resolution of this claim. In a letter dated August 28, 2007, Brown informed Maher that, inter alia, Patricia Gonyea's insurance carrier had offered to settle the defendants' claim for $100,000, the limit of her insurance policy. Brown also requested the plaintiff's counsel to "provide [him] with the current lien amount, and a breakdown of that amount." Brown's letter posed several other questions relative to outstanding medical bills and permanency payments, but did not address further the proposed settlement between the defendants and Gugliotti.

Maher responded to Brown in a letter dated September 10, 2007, advising him of the status of payments made by the plaintiff's insurer, and further informed Brown that the plaintiff's insurer anticipated the total outlay of benefits to exceed $100,000. As such, Maher requested that Gugliotti remit to the plaintiff's insurer all proceeds received from the settlement, after deducting attorney's fees and costs.[5] Maher sent Brown

[5] Maher's September 10, 2007 letter provides in relevant part: "Relative to third-party action, I am enclosing current payment records of [the plaintiff's insurer] which establish, through September 7, 2007, that payments equating to $38,537.74 have been occasioned. Additionally, as attached to your communication of August 28, 2007, we have received from Waterbury Hospital, residual of surgical intervention performed on July 30, 2007, a medical bill in excess of [$120,000] for confinement associated with surgery. Additionally,

two more letters, dated October 8, 2007,[6] and November 20, 2007,[7] respectively, reasserting the plaintiff's posi-

representatives of [the plaintiff's insurer] have suggested that they have received bills from physicians who performed fusion surgery in excess of [$40,000] for both the neurosurgeon and orthopedic surgeon who performed this operation.

"It is therefore quite obvious that, even before review and scheduling, the bills associated with recent surgical intervention will exceed [$70,000] after review, not taking into consideration reinstatement of your client's entitlement to temporary total benefits commencing on July 30, 2007 and continuing for a significant period of time.

"What I am therefore suggesting to you is that from the proceeds of the third-party action as set forth in . . . your letter of August 28, 2007, [the plaintiff's insurer] will have paid and/or be obligated to make payments in excess of [$100,000]. Therefore, concerning the third-party proceeds and examination of the provisions of . . . § 31-293, we feel that you are entitled to attorney's fees and costs associated with the litigation and we believe that [the plaintiff's insurer] is entitled to all monies from the anticipated third-party action. As such, as settlement is accomplished, please forward to the undersigned [a] check made payable to [the plaintiff's insurer] in the net amount of recovery after payment of attorney's fees and reasonable [costs] associated with the litigation. . . .

"[A]s I have indicated, I do believe that the entire net proceeds of the anticipated third-party settlement should be remitted by your office to [the plaintiff's insurer] through this office. Obviously, no moratorium against future liability will exist as . . . Gugliotti will not receive any proceeds from the settlement."

The defendants assert that in this letter, Maher "instructs . . . Gugliotti's counsel to proceed with the proposed settlement . . . ." We disagree. From the language quoted in the preceding paragraph, *which is the only language in that letter that directly addresses the proposed third party settlement,* we are entirely unable to discern any direction by Maher "to proceed with the proposed settlement . . . ."

[6] Maher's October 8, 2007 letter provides in relevant part: "[W]ould you please advise concerning my letter dated September 10, 2007 with respect to the third-party action. It is apparent that [the plaintiff's insurer] will be required to expend benefits in excess of [$100,000]. As such, it is our position that reimbursement of the entire net proceeds of the third-party action, after deduction of reasonable attorney's fees and court costs, should be made through this office to [the plaintiff's insurer]. . . ."

[7] Maher's November 20, 2007 letter provides in relevant part: "As I indicated to you, payment by [the plaintiff's insurer] would exceed [$75,000] due to the recent hospitalization and surgical intervention performed relative to [Gugliotti]. As such, please [advise] as to the status of the third-party action and more particularly whether or not you have been able to secure the policy limits from [the defendants' insurance carrier] which I acknowledge are [$100,000]. If so, it certainly is the position of [the plaintiff's insurer] that these monies should be reimbursed to them after deduction of reason-

tion that the proceeds from the settlement, minus attorney's fees and costs, were due to the plaintiff's insurer. Thereafter, on February 12, 2008, Brown remitted to Maher a check in the amount of $66,624.28, "as proceeds to pay the lien pursuant to [§] 31-293 . . . as asserted by you on behalf of your client in your correspondence dated September 10, 2007."

From this series of communications, which was the basis for the trial court's ruling and the defendants' arguments on appeal, we conclude that there is a genuine issue of material fact as to whether the plaintiff assented to the settlement.[8] As an initial matter, we note that Brown never directly asked Maher if the plaintiff was willing to assent to the proposed settlement; indeed, we are hard pressed to find an implicit request to assent to the settlement. Further, we note that Maher never explicitly agreed to assent to be bound by the settlement and, contrary to the defendants' assertions; see footnote 5 of this opinion; never instructed Brown on the manner in which the plaintiff or the plaintiff's insurer wished Gugliotti to proceed with respect to the settlement with the defendants, asserting only the plaintiff's rights to the funds obtained from the settlement. Indeed, in two of Maher's three letters, he explicitly noted that the plaintiff anticipated workers' compensation payments to exceed $100,000; in the third letter, he stated the expectation that payments would exceed $75,000. Thus, we further conclude that, viewing

able attorney's fees and costs associated with prosecution of anticipated third-party action. . . ."

[8] We note that the parties dispute the relevance and admissibility of an affidavit submitted by the plaintiff in support of its supplemental memorandum in opposition to the defendants' motion for summary judgment. The affidavit, executed by Maher, asserts, inter alia, that the plaintiff intended to pursue its litigation rights against the defendants. Although the question of this affidavit's admissibility is not directly before us, we note that, to the extent that it is admissible, it certainly raises additional questions as to the plaintiff's intent to assent to the settlement and voluntarily relinquish its future litigation rights.

the evidence in the light most favorable to the nonmoving plaintiff, this evidence at a minimum demonstrates the plaintiff's awareness of an outstanding balance after receiving the proceeds from the settlement between the defendants and Gugliotti, which in the context of this dispute, weighs against an absolute finding that the plaintiff had assented to the settlement and voluntarily relinquished its rights to recover that balance through subsequent litigation.

The defendants nevertheless implicitly argue in their brief, and explicitly asserted during oral argument, that the plaintiff had assented to the settlement by directing Gugliotti to forward to it the net proceeds received from the settlement.[9] We disagree. As we have noted, in addition to the plaintiff's right to intervene or initiate its own independent cause of action, the plaintiff also had perfected its lien right to the settlement proceeds; see General Statutes § 31-293 (a); which statutorily entitled it to any settlement *received* by Gugliotti from the defendants. Gugliotti recognized this right in Brown's letter of August 28, 2007, asking, "[w]ould you please provide me with the current lien amount, and a breakdown of that amount," and the plaintiff's direct reference to § 31-293 in Maher's response letter of September 10, 2007, further implicates that statute's lien provision. Moreover, Gugliotti explicitly acknowledged that the proceeds he forwarded to the plaintiff were "proceeds to pay the lien pursuant to [§ 31-293] . . . ." Thus, we conclude that whether the plaintiff voluntarily relinquished its legal rights by assenting to the settlement remains a question of fact for the trial court to decide, because the plaintiff's proposed distribution of the set-

---

[9] The trial court also explicitly relied on the plaintiff's written directive: "The assent was by virtue of the letter written that said, we suggest that as per the statute, you deduct the attorney's fees, and you deduct the costs from that, and you remit the remaining $66,000 to [the plaintiff's insurer] or to the [plaintiff]. That's the assent to the compromise."

tlement proceeds received by Gugliotti does not decide that issue by itself.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion the other justices concurred.