664 A.2d 1375

Maryann F. LENZI, Appellant,

v.

HAHNEMANN UNIVERSITY.

Maryann F. LENZI

v.

HAHNEMANN UNIVERSITY, Appellant.

Anthony ZUMPANO

v.

HAHNEMANN UNIVERSITY, Appellant.

Anthony ZUMPANO, Appellant,

v.

HAHNEMANN UNIVERSITY.

Superior Court of Pennsylvania.

Argued May 24, 1995.

Filed Sept. 8, 1995.

188

Mark E. Kogan, Philadelphia, for Maryann F. Lenzi & Anthony Zumpano.

Howard R. Flaxman, Philadelphia, for Hahnemann University.

Before CAVANAUGH, CIRILLO and HESTER, JJ.

HESTER, Judge.

Maryann Lenzi and Anthony Zumpano appeal from the July 15, 1994 Philadelphia County Court of Common Pleas order which vacated an August 4, 1992 adjudication and ordered a new trial. The underlying litigation commenced when appellants filed individual actions against appellee, Hahnemann University, seeking money allegedly owed to them pursuant to the salary continuation provisions of their respective separation release agreements.[1] The agreements were executed when appellants' employment was terminated due to downsizing. Appellants maintained that payments were to continue, in accordance with the terms of the agreement, in the event of re-employment. The separate actions were consolidated at a nonjury trial wherein appellee, which maintained that payments were to cease upon re-employment, filed a counterclaim against Ms. Lenzi seeking to recover payments which were issued subsequent to her re-employment. When verdict was entered in favor of appellee, appellants filed a motion for a new trial or for judgment notwithstanding the verdict. The trial court granted a new trial. We reverse and order that judgment n.o.v. be entered in favor of appellants.

The pertinent facts follow. This case originally was filed as two separate actions. Appellants had been employed by appellee; Ms. Lenzi was the Acting Associate Director of Fiscal Services, and Mr. Zumpano was the Assistant Controller. In January, 1990, appellee implemented a major reduction in its work force affecting approximately 150 employees. In conjunction with the terminations, appellee drafted an Income Continuation Policy, dated January 5, 1990, wherein the stated objective was: "To provide income for a limited period to employees who have been involuntarily separated from employment while they seek other employment." Further, while it stated that income continuation allowance payments would continue until employees obtained other employment, it also provided that the procedures in the policy were effective unless otherwise covered by a signed contract with the Uni-

---

1. While we recognize that Hahnemann has filed a cross-appeal in this action, it is for ease that we refer to it as appellee.

versity. Moreover, it contained the following contingency. "To be eligible for additional income continuation allowance payments, the employee must also have a signed and witnessed Separation Release Agreement." Upon termination, appellants each were given an envelope which contained a termination letter ("letter"), a separation release agreement ("SRA"), and appellee's policy on income continuation ("policy"), all of which were drafted by appellee and its attorneys.[2]

The termination letters were signed by an officer of appellee and stated that appellants' positions with appellee had been eliminated. The letters provided that compensation and benefits would continue for three weeks and terminated employees were eligible for additional income and the continuation of benefits as provided by an attached schedule and SRA as long as the employees signed the SRAs within three weeks. The letters emphatically warned, "It is important that you return the [signed SRA] [to the Vice President of Human Resources] by [the specified date]. If we do not receive the signed SRA by that date, you will have rejected the additional income continuation benefits." It is implied that the three weeks income would continue regardless of the return of a signed SRA. Therefore, only the additional income benefits described in the attached schedules were contingent upon appellees' compliance with the SRA and its terms.

The letter referred to the SRA as a "binding contract" between appellants and appellee, the purpose of which was to "finally resolve *all* questions of compensation, entitlement to benefits, and any and all other claims, whether known or unknown which the employee may have" relating to employment or termination. (emphasis added). In consideration for payments made in accordance with attached schedules, appellants' signatures on the SRA evidenced their promise not to hold appellee responsible for any liability resulting from their termination for reasons including but not limited to "age, race, or sex, or wrongful termination ..." Moreover, appellants' signatures reflected their promise not to file charges against

2. Mr. Zumpano received his envelope on January 9, 1990, and Ms. Lenzi received her envelope on June 13, 1990.

appellee with any government agency in return for receiving the benefits outlined in the attached schedule.[3] There were no conditions of payment stated in the SRA other than appellants' signatures. Lastly, the SRA provided, "This document supercedes and terminates any written or oral contracts of employment which may have been in existence between the parties prior to this date. Any changes to this agreement must be in writing and initialed by both parties."[4] Neither the letter nor the SRA referenced the policy.

At trial, appellants argued that they were entitled to continued separation payments under the terms of the SRA in accordance with the attached schedules, regardless of the fact that they had secured other employment. Specifically, they maintained that the signed SRAs were evidence of the sole and all-inclusive separation contract between themselves and appellee. Appellee countered that all three documents which were presented to each employee upon dismissal comprised the separation contract between itself and the terminated employee and argued that if the three documents were read together, it was clear that the SRA was subject to the policy's condition that separation payments would cease upon re-employment. Appellee also argued that it was entitled to $2,852.30 in severance payments it inadvertently made to Ms. Lenzi after she gained employment.

On January, 21, 1992, after hearing testimony from appellee explaining its intention with respect to the SRAs and income continuation payments, the trial court held that the three documents contained in the envelope given to the displaced employees comprised the separation contract and awarded $2,852.30 to appellee. Appellants, who sought post-trial relief,

3. For Ms. Lenzi, payments of bi-weekly compensation in the amount of of $2,852.30 less deductions, would continue through April 3, 1991. Appellee ceased payments on August 22, 1990, leaving a purported contractual obligation of $49,059.56, plus interest. For Mr. Zumpano, payments of bi-weekly compensation in the amount of $3,090.00, less deductions would continue through November 20, 1990. Appellee ceased payments on August 17, 1990, leaving a purported contractual obligation of $22,248.00, plus interest.

4. Mr. Zumpano's SRA was signed and dated, January 25, 1990. Ms. Lenzi's SRA was signed and dated, June 21, 1990.

requested either judgment n.o.v., arguing that appellee failed to present evidence that the SRA was not a fully integrated writing, or a new trial on the basis that the court erred in allowing appellees to introduce parol testimony as to the parties' intentions and understanding with regard to the income continuation policy.

On July 15, 1994, the court entered an order which acknowledged that the SRA appeared to be an integrated contract and vacated its previous judgment. However, instead of directing a verdict in favor of appellants, it granted a new trial, not because it conceded it had erred in allowing parol evidence regarding the income continuation policy, but to give appellee the opportunity to present evidence on the effect of the SRA in the context of corporate downsizing. This appeal followed.

Appellants contend that appellee presented no evidence which legally would alter the premise that the SRA was not the fully integrated, unambiguous expression of the parties' intentions that it purported to be. They argue that the trial court erred when it permitted appellee to introduce testimony as to its intent and claim that this error resulted in an improper verdict. Finally, they maintain that the trial court abused its discretion when it granted a new trial to allow appellee to introduce evidence regarding the impact of release agreements on corporate downsizing and urges that the court should have granted their motion in favor of the non-verdict winner.

In its cross-appeal, appellee claims that the court abused its discretion by ordering a new trial for reasons not specified or preserved by appellants in their motion. It also maintains that the trial court erred in vacating its August 4, 1992 decision which determined that three documents, a letter of termination, a separation release agreement, and a policy statement, not simply the separation agreement, comprised the complete contract with appellants. Appellee requests that we reverse the July 15, 1994 order and reinstate the August 4, 1992 order.

Following a thorough review of the record, we conclude that the trial court was correct in its determination that the SRA represented a comprehensive contract which was not dependent upon the other two documents in the envelope presented to employees upon termination. However, since the trial court erred when it granted a new trial instead of granting appellants' motion for judgment n.o.v. and back payments plus interest, we are constrained to reverse.

The following is undisputed. Appellants were employees of appellee, and their employment was terminated with three weeks severance pay. In addition, pursuant to the SRA, the employees' salaries would continue for an additional, but finite, period in return for the employees' promises not to pursue legal avenues otherwise available. The SRA was drafted by appellee and clearly purports to be a fully-integrated, unambiguous expression of the parties' intentions upon termination. The SRA does not reference the other documents contained in the envelope.

 The policy clearly provided that the income continuation procedure applies to displaced employees while they seek other employment. Further, it specified that it superceded other *policies, not contracts,* which were previously issued by the University regarding severance and stated that the procedures it contained applied unless a *contract* between the employee and the University existed. Moreover, in the event that a procedure is specified by contract, the policy states that the contract shall govern and take precedence over the policy. While the policy referred to an attached exhibit which was designed to aid the employee in calculating maximum income continuation allowances, it made no reference to either the letter, the SRA, or the attached schedule. Clearly, the policy regarding income continuation did not purport to be a contract. It was not signed, nor did it evidence any bargained-for-exchange or consideration. Further, the policy did not supercede any contract between appellee and its employees. Therefore, we must look to the SRA and determine whether it meets the criteria for an integrated, unambiguous contract.

A purview of the SRA reveals that it is a contract which contains terms, signatures, bargained-for-exchange, and consideration. On its face, the document states that it is the sole expression of the agreement between the parties, that no other document before or after it shall supercede it.[5] It is well-settled that parol evidence is not admissible to alter or vary the terms of a contract which has been reduced to an integrated writing. "The parol evidence rule seeks to preserve the integrity of written agreements by refusing to permit the contracting parties to attempt to alter the import of their contract through the use of contemporaneous oral declarations." *Rose v. Food Fair Stores, Inc.,* 437 Pa. 117, 120–121, 262 A.2d 851, 853 (1970). If a written contract is unambiguous and held to express the embodiment of all negotiations and agreements prior to its execution, neither oral testimony nor prior written agreements or other writings are admissible to explain or vary the terms of that contract. *McGuire v. Schneider, Inc.,* 368 Pa.Super, 344, 534 A.2d 115 (1987); *see also Gemini Equipment v. Pennsy Supply,* 407 Pa.Super. 404, 595 A.2d 1211 (1991) (written contract, if unambiguous, must be held to express all negotiations, conversations, and agreements made prior to its execution, and neither oral testimony, nor prior written agreements are admissible to explain or vary contract terms). The issue of whether a writing constitutes an integrated contract is a question of law. *Murray v. University of Pennsylvania Hospital,* 340 Pa.Super. 401, 490 A.2d 839 (1985). A contract is integrated if it represents a final and complete expression of the parties' agreement. *McGuire v. Schneider, Inc., supra.* Where a contract purports to be a complete legal obligation without any doubt as to its object or extent, it is presumed to reflect the whole legal right of the parties. *Id.*

Herein, the SRA clearly purports to constitute a final and complete expression of the rights and obligations of the parties. In pertinent part, the release provides:

5. We note once again that the policy is dated, January 5, 1990, while the SRAs are dated June 21, 1990, and January 25, 1990.

Both Hahnemann and the Employees desire to enter into this Agreement to finally resolve all questions of compensation, entitlement to benefits, and any and all other claims, whether known or unknown, which the Employee may have relating to his/her employment and/or its termination by Hahnemann.

. . . .

This document supercedes and terminates any written or oral contracts of employment which may have been in existence between the parties prior to this date.

. . . .

Any changes to this agreement must be in writing and initialed by both parties.

Appellants claim that since the SRA is an integrated document, the trial court erred in allowing appellee to present testimony regarding the intent of the parties. Appellants are mistaken in their interpretation of controlling principles. The parol evidence rule does not preclude the admission of evidence to establish whether the parties *intended* the writing to be a complete embodiment of their agreement. *Murray v. University of Pennsylvania Hospital,* 340 Pa.Super. 401, 490 A.2d 839 (1985). Appellee correctly notes that since whether the writing constituted the entire agreement was a question of law for the court, the trial court properly allowed appellee to present testimony that appellants understood that the policy, letter, and SRA represented the entire contract. The trial court did not accept the introduction of parol evidence to vary the *terms* of the SRA, but allowed the testimony to aid in defining the *intent* of the parties with regard to the termination of employment. Therefore, the introduction of testimony as to intent was relevant to the ultimate issue as to whether the SRA was a fully integrated writing and did not constitute error.

In providing the court with testimony concerning its intent, appellee sought to prove that the SRA did not embody the complete terms of separation. In essence, appellee presented a circular argument that the SRA was not fully integrated

because appellee did not intend it to be, and appellee tenaciously tried to convince the court that appellants were aware of that intent. Specifically, appellee maintained that the termination contract, consisting of the three documents, comprised the true contract. However, other than appellee's offers of testimony that appellants knew or should have known that the three documents were an all-inclusive representation of the termination contract, appellee failed to address the prominent lack of any written incorporation by reference of the policy to the otherwise specific SRA contract.

■ After a thorough review of the testimony, we concur with the trial court's revised determination which evaluates the evidence in light of controlling case law:

Upon reflection, this court believes that the determination that each contract at issue is comprised of a letter, a release and a policy does not completely address the rights and obligations of the the parties under each contract, because of the unique effect of release.

. . . .

If, . . . the release is to be strictly construed as containing all the terms of the release, the continuation of separation payments is not conditioned upon a terminated employee's remaining unemployed. The only condition to receiving separation benefits that is specifically mentioned in the release is that the terminated employee must sign the release.

. . . .

[Quoted language] appear[s] to indicate that the agreement is to be regarded as a self-contained document for the purpose of determining the parties' rights and obligations with respect to separation payments.

Trial Court Opinion, 12/20/94, at 7.

■ However, the court, then deviated from its correct analysis when it credited, on its face, appellee's argument that Pennsylvania law recognizes that *two contracts* may be construed together to represent a complete transaction even where the subsequent contract contains an integration clause.

*Neville v. Scott,* 182 Pa.Super. 448, 127 A.2d 755 (1956). What the trial court herein failed to consider is that we may only utilize this method where two contracts exist, and where one contract does not provide for a complete representation of the intent of the parties. *Id.* Clearly, the separation agreement in question is an irrevocable contract for which appellants gave substantial consideration, was executed by both parties, and stands on its own terms; whereas, the policy is a unilateral document devoid of consideration, unsigned, and by its own terms not applicable to the SRA. *See Martin v. Capital Cities Media, Inc.,* 354 Pa.Super. 199, 511 A.2d 830 (1986) (employee handbooks are not contracts since they lack consideration). Therefore, the facts provide that there are not two contracts at issue. Consequently, the SRA is the *only* contract between the involved parties, and *Neville v. Scott, supra,* is not controlling.

However, if, as appellee argues, the policy and the testimony which it offered as evidence prove that the parties *intended* that income continuation payments were to be little more than additional unemployment compensation payments which would continue only until the displaced employees secured other employment, then likewise, it would follow that the intent of the parties must have been that the SRA represented merely a *suspension* of the employees' rights to sue appellee until income continuation benefits ceased. This illogical premise would render the SRA null and void upon re-employment, and therefore, worthless, since all legal rights of the displaced employees would be reinstated as soon as they became re-employed. Instead, it appears that first, appellee agreed to provide its employees with a separation package in return for their past performance and future assurance not to seek legal retribution against appellee for their dismissal. Then, appellee sought a means by which to curtail its expenditures and decided to renege on the income continuation offers at its earliest convenience. Appellee seized that opportunity, while limiting its liability, by attempting to bootstrap the income continuation policy to the SRA contract so as to buttress re-employment to early cessation of payments.

We are constrained to reverse the order granting a new trial, and we grant judgment n.o.v. in favor of appellants. Monetary award to each appellant shall be equal to the remaining sum owed to each employee, as provided in Schedule A less payments, plus interest.

Order reversed. Judgment n.o.v. granted in favor of Maryann F. Lenzi in the amount of $49,059.56, plus interest. Judgment n.o.v. granted in favor of Anthony Zumpano in the amount of $22,248.00, plus interest. Case remanded. Jurisdiction relinquished.