J-A09027-21

2022 PA Super 21

| | | |
|---|---|---|
| GASBARRE PRODUCTS, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN K. SMITH, A/K/A S.K. SMITH | : | |
| | : | |
| Appellant | : | No. 730 WDA 2020 |

Appeal from the Judgment Entered July 21, 2020
In the Court of Common Pleas of Clearfield County Civil Division at
No(s): 2018-1207-C

BEFORE: STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

OPINION BY STABILE, J.:                    FILED: FEBRUARY 7, 2022

Appellant, Steven K. Smith ("Smith"), appeals from a July 21, 2020 judgment entered after a non-jury trial before the Court of Common Pleas of Clearfield County granting Appellee, Gasbarre Products, Inc. ("the Company"), specific performance of a document signed by both parties. The trial court concluded that the document was an enforceable contract between them. At issue is whether the trial court erred in finding an enforceable agreement between the parties and, if so, whether the trial court erred in its application of the parol evidence rule to find that the document resolved settlement of

_____

[*] Retired Senior Judge assigned to the Superior Court.

Appellant's loan shareholder account with the Company. After review, we affirm.[1]

## I.      Factual & Procedural Background

Smith worked as a divisional president at the Company for 18 years. In 2017, he and CEO Thomas Gasbarre ("Gasbarre") entered into discussions regarding Smith's retirement from the Company and his withdrawal from the Company's board of directors. These talks included the process by which the Company would buy back Smith's stock and pay out money from his shareholder loan account. Smith retired at the end of 2017.

On January 11, 2018, Smith and Gasbarre met privately to negotiate further. At some point prior to the conclusion of the meeting, Gasbarre drafted a one-page document titled "Steve Smith/Gasbarre Products, Inc. Stock Buyout Structure Outline." The third paragraph addressed the buyback of Smith's stock in the company and provided, "**Selling Price** – . . . 251 Shares at $895.92/share for a total of $224,875.92." Company Ex. 1 (emphasis in original). Also of relevance, the tenth paragraph provided:

> **Severance/Consulting** – Steve agrees to remain available for consultation on an as-needed basis from January 7, 2018 through April 14, 2018. Compensation will be at Steve's departing salary for the consulting period (8 paychecks from January 25, 2018 through May 3, 2018). Total Net Pay for

---

[1] Smith filed a separate action seeking recovery of the full amount of his shareholder loan account. *See Smith v. Gasbarre Products, Inc.*, 2019-1531-CD (C.C.P. Clearfield 2019). The trial court refused to consolidate that action with these proceedings and stayed that case pending the outcome of this appeal.

the consulting period will be $78,954 (number of paychecks
to be adjusted as necessary).

*Id.* (emphasis in original). Gasbarre signed the bottom left-hand margin of the document with his full signature; Smith wrote "SK Smith" in the bottom right-hand margin. *See id.* The Company claimed the parties entered into a binding contract. Smith argued the outline merely identified issues to be resolved in future discussions.

"In the course of the following weeks, several e-mails were exchanged between the parties discussing potential changes, including date of payment for consulting/severance payments." Trial Court Opinion, 3/10/20, at 1. The Company's attorneys then prepared a formal document that included these changes in terms. "The agreement was to be signed on January 30, 2018; however, the agreement was never signed, and [Smith] did not surrender his stock to [the Company]." *Id.* at 1-2.

According to the Company, it sent Smith checks for $224,857.92 and $78,954.00, representing what it believed the Company owed Smith for the buyout of his stock and the money in his shareholder loan account, respectively. *See* Complaint at 4. The Company claimed Smith refused to cash those checks or to return his stock certificates. Smith "denied that [the Company] ever tendered this payment." Trial Court Opinion, 3/10/20, at 3. Furthermore, he "denied the existence of any binding contract." *Id.* Smith "also pleaded he is entitled to further payment and interest on the loan [he] made to his shareholder account." *Id.* at 4.

On August 2, 2018, the Company sued Smith for specific performance. The Complaint requested that the trial court order Smith to "tender his 251 shares of stock to [the Company] in consideration for the sum of $224,875.92" and decree "that the sum of $78,954.00 tendered by [the Company] to [Smith] constitutes full and final payment of all non-stock purchase money owed to [Smith] under the Agreement of January 11, 2018[.]" *Id.* at 5. The Company also requested an injunction. Following an injunction hearing, the trial court found no "disagreement between the parties over the value of [Smith's] stock or that [he] would indeed tender the stock back to [the Company]." Trial Court Opinion, 3/10/20, at 2. Also, "the parties agreed upon . . . an order granting a preliminary injunction ordering [Smith] to surrender [his] shares of stock . . . for the agreed upon price of $224,875.92 . . . subject to oral stipulations entered on the record" by the parties. *Id.* "Accordingly, [Smith] tendered his stock, [the Company] made the payment to [him,] and the stock issue was settled." *Id.* at 3. One question remained unresolved: How much money, if any, did the Company owe Smith from his shareholder loan account?

On October 25, 2019, Smith moved for summary judgment. He contended that, even though the Company sought "as its sole remedy that the court direct specific performance of the Stock Buyout Structure Outline, it is clear that [the Company's] claim is based in assumpsit, resulting from [Smith's] alleged breach of the Stock Buyout Structure Outline." Smith's Motion for Summary Judgment at 6. Therefore, Smith contended that the

company had an adequate remedy at law and the court lacked equitable jurisdiction. The trial court did not address the merits of Smith's motion for summary judgment. Instead, it dismissed the motion as untimely and in violation of Pa.R.C.P. 1035.2, which provides that a motion for summary judgment shall be filed "within such time as not to unreasonably delay trial." The trial court concluded it had "insufficient time available to correctly process [the motion]" in advance of the trial scheduled for November 6, 2019. Trial Court Order, 10/25/19, at 1.

Gasbarre and Smith both testified at the November 6, 2019 bench trial. Gasbarre explained how the parties arrived at the Stock Buyout Structure Outline (hereinafter referred to as "the Outline") and why it constituted a contract between the parties. Smith asserted that the document constituted a memorandum reflecting the issues a future contract should address and argued he simply initialed the document rather than sign it with his full signature.[2] Gasbarre also testified as to the true meaning and purpose of the language in the Outline, and in particular Paragraph 10, entitled "Severance/Consulting." Company Ex. 1.

The exchange between Gasbarre and his counsel was as follows:

Q: Now, let's go down to paragraph 10. That deals with severance consulting?

A: Yes.

---

[2] The document is signed "SK Smith."

- 5 -

Q: It's been pointed out on many occasions in [prior] cross examination that this paragraph says nothing about shareholder loan account?

A: That's correct.

Q: Is there any doubt in your mind that this paragraph, that you imposed, was intended to address Mr. Smith's Shareholder-Loan Account?

A: Absolutely not.

. . .

Q. So this is characterized as a severance/consulting agreement. Is there a reason why it's characterized as that?

A. Yes. We – again, we were negotiating the final terms, which included the loans from shareholders. Just as we negotiated the 60[-]month payments instead of 120-month payments [for the stock repurchase], we were also trying to facilitate the payout of that one-half of the loans from shareholders that we had agreed on. The easiest way to facilitate that, both in Mr. Smith's favor, as well as to the benefit of Gasbarre Products, was the fact that he was still on the payroll records. That we would pay it out as a severance/consulting fee, through the payroll process. It was simply to facilitate, that is the reason for the wording, which is exactly why it's one-half of the loans from shareholders account.

But not only that, more importantly, it was netted up, which you normally don't do through the payroll system. It was netted up, because the loans from shareholders is paid out tax free. If we simply paid it as a severance/consulting fee, it wouldn't have been netted out, and he'd have to pay taxes. So we netted it up so he got precisely one-half of the loan from shareholders. It's worded very carefully in that matter.

Notes of Testimony, 11/6/19, at 25-28. According to Gasbarre, the parties intended the words "severance/consulting" in the writing to mean one-half of Smith's shareholder loan account. They deliberately omitted any reference to

their agreement on the shareholder loan account to avoid tax consequences that neither party desired.

By opinion and order entered March 10, 2020, the trial court granted the Company full relief. The court made a factual finding that "[a]n enforceable contract exists between Gasbarre Products, Inc. and Steven K. Smith as is set forth in the Outline of January 11, 2018." Trial Court Order, 3/10/20, at 1. It further ordered the parties "to follow the terms of the Outline from January 11, 2018." *Id.* Finally, the court directed Smith "to accept the amount of $78,954.00 by Gasbarre Products, Inc. as full and final payment for retirement compensation and/or any loan [Smith] made to his shareholder account." *Id.* In its opinion, the trial court explained its directive to accept payment, stating, "Clearly the remedy of specific performance was the only one available to [the Company] regarding . . . the parties' compromise that pursuant to paragraph 10 of the January 11, 2018 Agreement [the Company] would pay $78,854.00 to [Smith]." Trial Court Opinion, 3/10/20, at 7. The court determined that the amount stated in paragraph 10 of the writing "was clearly in full satisfaction of [Smith's] claim that he was owed on the loan to his shareholder account." *Id.*

On March 24, 2020, Smith filed a motion for post-trial relief and a notice of appeal to this Court. By order entered May 27, 2020, we quashed the appeal as prematurely filed. *See Gasbarre Products, Inc. v. Smith*, 431 WDA 2020 (Pa. Super. 2020). On July 16, 2020, the trial court dismissed Smith's motion for post-trial relief. On July 21, 2020, judgment was entered

- 7 -

in favor of the Company. This timely appeal followed. Both Smith and the trial court complied with Pa.R.A.P. 1925.[3]

## II. Analysis

Smith raises five issues, which we have reordered below for ease of disposition:

1. Whether the trial court committed clear error in denying [Smith] his right to a trial by jury.

2. Whether the trial court committed clear error in granting equitable relief to [the Company], by directing [Smith] to accept the sum of $78,954.00 to dispose of the entire balance of [Smith's] shareholder loan account, which indisputably had accrued a total balance of $157,908.00, when [the Company] maintains an adequate remedy at law (*i.e.*, an action in assumpsit).

3. Whether the trial court committed clear error in determining that the "Stock Buyout Structure Outline" resulted from the mutual assent of the parties and that the "Stock Buyout Structure Outline" otherwise meets the legal criteria to be considered an enforceable contract between [the parties].

4. Whether, assuming *arguendo* that the "Stock Buyout Structure Outline" is an enforceable contract between [the parties], the trial court committed clear error in allowing [the Company] to use and rely upon parol and extrinsic evidence to vary the plain meaning of the clear and unambiguous terms contained within the "Stock Buyout Structure Outline."

5. Whether, assuming *arguendo* that the "Stock Buyout Structure Outline" is an enforceable contract between [the parties], the trial court committed clear error in determining that the "Stock Buyout Structure Outline" governs the

---

[3] In response to Smith's Rule 1925(b) statement, the trial court issued a Rule 1925(a) opinion supplementing its March 10, 2020 opinion. ***See*** Supplemental Opinion, 9/11/20.

- 8 -

disposition of the balance of [Smith's] shareholder loan account.

Appellant's Brief at 4-5. We address the first three claims of error in turn and discuss the fourth and fifth issues together, as they are interrelated.

### *Issue 1 - Waiver of Trial by Jury*

Smith faults the trial court for denying him his constitutional right to a trial by jury in this action for specific performance.[4] In his view, once he returned the stock certificates to the company, the Company could no longer seek equitable relief. The action converted to a contract dispute at law over the monetary damages from the shareholder loan account. Appellant's Brief at 42. Smith contends that, "[a]s a breach of contract action, [he] maintains

---

[4] Our constitution provides, "Trial by jury shall be as heretofore and the right thereof remain inviolate." Pa. Const. art. I, § 6. The Framers of this clause "looked to preservation, not extension. It is the old right, whatever it was, the one previously enjoyed, that must remain inviolable . . . ." ***Byers v. Commonwealth***, 42 Pa. 89, 94 (1862). Our Supreme Court has held that the right to a jury trial encompasses only legal (as opposed to equitable) causes of action that existed when the 1790 Constitution went into effect. ***See Wertz v. Chapman Township***, 741 A.2d 1272, 1275–76 (Pa. 1999) (finding no right to jury trial under Pennsylvania Human Relations Act, because the statute that created the cause of action did not grant that right and no such cause of action existed in 1790); ***Commonwealth v. One (1) 1984 Z–28 Camaro Coupe***, 610 A.2d 36, 41 (Pa. 1992) (finding right to jury trial for *in rem* forfeiture cases, because such cases were heard by juries in 1790); ***William Goldman Theatres, Inc. v. Dana***, 173 A.2d 59, 64–65 (Pa. 1961) (finding right to jury trial for obscenity charge, because such cases were heard by juries in 1790); ***Appeal of Watson***, 105 A.2d 576, 577–78 (Pa. 1954) (finding no right to jury trial on issue of tenure for a teacher fired for "mental derangement" where such cases were not heard by juries in 1790); ***Premier Cereal & Beverage Co. v. Pennsylvania Alcohol Permit Bd.***, 140 A. 858, 859–60 (Pa. 1928) (finding no right to jury trial on issue of revocation of liquor license where such cases were not heard by juries in 1790).

an undeniable right to trial by jury; however, a jury trial is not afforded to litigants when courts exercise their equitable powers." ***Id.***

Smith fails to recognize that the Company's action, at all times, was an action seeking specific performance. The suit was not transformed into a breach of contract action seeking money damages after the stock repurchase issue was resolved.

As the Company observed:

> Presently, [the Company] does not seek a remedy in money damages for breach of contract; rather, [the Company] was granted the equitable relief of specific performance **to enforce the terms of the retirement contract** by compelling Smith to accept the tendered buyout payment in exchange for return of his stock, and in full settlement of his retirement compensation.

Appellee's Brief at 29 (emphasis in original). Once the stock repurchase issue was resolved, the Company's action remained an action seeking specific performance of the terms of the Outline by which Smith agreed to accept compensation for his availability for consulting services. As the trial court recognized, "Clearly the remedy of specific performance was the only one available to [the Company] regarding the stock, **as well as the parties' compromise that pursuant to paragraph 10 of the January 11, 2018 Agreement [the Company] would pay $78,854.00 to [Smith]."** Trial Court Opinion, 3/10/20, at 7 (emphasis added). Smith was not denied a constitutional right to a jury trial because no such right existed. As the

Company submits, while Pa.R.C.P. 1038.3[5] provides for a permissive jury trial on claims for equitable relief, "[t]here is no evidence or documentation of record to support a finding that the trial court abused its discretion in denying a jury trial." Appellee's Brief at 32-33. The trial court did not commit error of law in denying Smith a jury trial. Smith is not entitled to any relief on his first issue.

### Issue 2 - The Grant of Equitable Relief

Next, according to Smith, the trial court "committed clear error by granting equitable relief to the Company in the form of specific performance[.]" Appellant's Brief at 41. He argues that the trial court's grant of "specific performance was not appropriate[, because] the Company maintains an adequate remedy at law for breach of contract, and thus specific performance is not a proper remedy." *Id.* at 42.

Smith raised this issue in his summary judgment motion, asserting the Company's action should be dismissed for want of equity jurisdiction. However, as the trial court recognized, in his motion, Smith "relied on an

---

[5] Rule 1038.3 (**Equitable Relief. Advisory Verdict by Jury**) provides:

> In any case in which there is a claim for equitable relief, the court on its own motion or upon the petition of any party may submit to trial by jury any or all issues of fact arising from that claim. The advisory verdict of the jury shall be in the form of answers to specific questions and shall not be binding upon the court.

Pa.R.C.P. 1038.3.

outdated authority—the most recent case citation having issued in 1996—in arguing the lack of equity jurisdiction." Supplemental Opinion, 9/11/20, at 3.

We reject—as did the trial court—Smith's attempt to couch this issue as jurisdictional. As the trial court explained:

> Pursuant to amendment to the Pennsylvania Rules of Civil Procedure effective July 1, 2004, the separate form of action in equity has been abolished and the rules governing civil actions have been amended to include equitable relief. The consolidated civil action allows the court to grant the relief to which a party is entitled, whether legal or equitable. Pa.R.C.P. 1501 (rescinded) (Note: The action in equity has been abolished. Equitable relief may be obtained through a civil action . . .".)
>
> Under the consolidated civil action, there is no longer a law side and [an] equity side. "There is simply 'the court' which is empowered to grant appropriate relief whether legal or equitable." Pa.R.C.P. Equitable Relief—No. Refs and Annos—Explanatory Comment 2003. [The Company] seeks equitable relief for specific performance of a contract. Accordingly, [Smith's] motion to dismiss for lack of equity jurisdiction was inappropriately brought in this case, untimely, and completely lacking in merit.

*Id.* 4 (footnote omitted).

We agree with the trial court that there are not separate courts of law and equity with separate subject matter jurisdictions and further agree that Smith's jurisdictional challenge lacks merit. Smith is not entitled to relief on his second issue.

### Issue 3 - Factual Finding of a January 11, 2018 Contract

We now turn to the trial court's finding that the Company and Smith entered into a contract on January 11, 2018, which they reduced to a writing— *i.e.*, the Stock Buyout Structure Outline ("the Outline"). Smith contends that,

as a matter of law, there was insufficient evidence of record to support that factual determination.

In Smith's view, "it is clear that the minds of [the parties] did not meet upon all the terms necessary to form the basis of a binding contract." Appellant's Brief at 27. Smith claims the evidence establishes that, after the January 11, 2018 meeting, "a proposed full and final agreement was eventually produced by the Company's counsel, and that the proposed full and final agreement contained terms that were materially different from those found in the Outline." *Id.* at 22. He points to his own testimony that he consulted his tax adviser and attorney following the January 11, 2018 meeting as proof that the Outline was merely a list of subjects for future negotiations, rather than a final contract. *Id.* at 33.

When reviewing the denial of post-trial relief following a non-jury trial, we are to determine only "whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law." *Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 664 (Pa. Super. 2014) (quoting *Wyatt, Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 564 (Pa. Super. 2009)). "The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner." *Id.* Moreover, we are mindful that "the trial judge, as finder of fact, is free to believe all, part, or none of the evidence, and this Court will not disturb his credibility determinations." *Williams v. Taylor*, 188

A.3d 447, 450 (Pa. Super. 2018). Accordingly, "[w]e will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary." ***Stephan***, 100 A.3d at 664-65 (some punctuation omitted).

For an enforceable agreement to exist, the plaintiff must prove all essential elements of a contract by a preponderance of the evidence. "It is black letter law that in order to form an enforceable contract, there must be an offer, acceptance, consideration or mutual meeting of the minds." ***Jenkins v. Cty. of Schuylkill***, 658 A.2d 380, 383 (Pa. Super. 1995). "Absent a manifestation of an intent to be bound . . . negotiations concerning the terms of a possible future contract do not result in an enforceable agreement." ***Philmar Mid-Atlantic, Inc. v. York Street Associates II***, 566 A.2d 1253, 1255 (Pa. Super. 1989).

Smith believes that the Outline reflects terms of a possible future contract. However, his subjective belief is irrelevant. "Because a court is constrained to construe the parties' contract based on the parties' ***outward and objective actions*** — particularly, the plain terms of their written agreement — a subjective, or 'true and actual,' meeting of the minds is not necessary for an enforceable contract to form." ***Nicholas v. Hofmann***, 158 A.3d 675, 693 (Pa. Super. 2017) (emphasis added).

Here, objectively speaking, Smith and the Company had been discussing Smith's departure from the company for nearly a year by the time of the

January 11, 2018 meeting. Indeed, the parties already had agreed that Smith was no longer in the company's employ as of December 31, 2017. Thus, the parties met in early January 2018 to resolve other issues, such as Smith returning his stock shares and the payout, if any, from his shareholder loan account. *See* N.T., 11/6/19, at 15-16, 18. Gasbarre testified that once the parties had established that the valuation of the stock would be the Company's 2017 valuation, their "only other discussion was the loans from shareholders and that's what [they] were negotiating up until January 11[.]" *Id.* at 19.

Smith argued he should receive the full book value of the shareholder loan account of $157,907.00. The Company disagreed, taking the position that the account payout was subject to negotiation, as had been the company's past practice with other shareholders. Gasbarre further testified that the parties reached an agreement in the January 11, 2018 meeting regarding this issue. *See id.* at 23. He stated that the parties compromised "at exactly one half of the loans from shareholder's balance," and that their agreement was put in writing in the Outline, which he authored. *Id.* at 23-24. He further testified that both parties signed that document. *Id.* at 24.

The Outline identifies the Company as the buyer of Smith's stock. It sets the effective date of the sale and the price per share, based upon "the independent valuation as of July 31, 2017 and dated December 1, 2017 by Allegheny Financial Forensics." Company Ex. 1. The Outline also dictates the payment terms for the shares, allows for early payment, continues Smith's life insurance for the agreement's duration, anticipates a non-competition and

confidentiality clause without relating specific terms, obligates the company to cover Smith's taxes for Company operations ending 7/31/17, confirms dates of Smith's retirement and resignation from the Board of Directors, includes a clause on "Severance/Consulting" through April 14, 2018 with a net payment of $78,954.00 for the consulting period based on Smith's departing salary, and charges the Company's attorneys with preparation of necessary documentation for the agreement at the Company's expense. ***Id***. The Outline is replete with defined, essential terms that establish the rights and duties of the parties.

Based on the foregoing, the Company presented sufficient evidence upon which the trial court could find that the parties reached a meeting of the minds on January 11, 2018, and that the Outline was the written product of their agreement. While reasonable minds could differ on this question, one may infer from Gasbarre's recollection of events and from Smith's signature on the Outline that the parties agreed to its terms. The trial court's finding that there was a meeting of the minds finds support in the record, a finding we are not free to disregard.

Smith's argument that he only initialed, rather than signed, the document is of no moment, as the trial judge, as finder of fact, was "free to believe all, part, or none of the evidence, and this Court will not disturb his credibility determinations." ***Williams***, 188 A.3d at 450. In finding that an enforceable agreement existed between the parties, the trial court placed no significance on the fact Smith signed the Outline as "SK Smith," as confirmed

by the trial court's statement that the Outline "was created and signed by" Gasbarre and Smith. Trial Court Opinion, 3/10/20, at 1. Simply stated, the trial court rejected Smith's version of the facts in finding that an enforceable agreement existed between the parties.

Where, as here, "the evidence is conflicting as to whether the parties intended that a particular writing would constitute a complete expression of their agreement it . . . is a question of fact for the trier of fact to determine whether a contract exists." ***Field v. Golden Triangle Broad., Inc.***, 305 A.2d 689, 691 (Pa. 1973). Because the trial judge concluded that the January 11, 2018 Outline was intended by the parties to be a valid, binding contract, we will not reverse his finding. ***See Field***, 305 A.2d at 692 (where factfinder determined that letter agreement was intended by the parties to be a valid, binding contract, Supreme Court will not reverse that finding). Smith's challenge to the sufficiency of the evidence proving that the parties entered a written contract warrants no relief.

### *Issues 4 and 5 - Parol Evidence and the Shareholder Loan Account*

Finally, we address Smith's challenge to the trial court's conclusion that the Outline governs the company's final payment from his shareholder loan account. He argues the trial court violated the parol evidence rule in reaching that conclusion. Smith contends that without the testimony of Gasbarre to vary the unambiguous language of the writing, the document does not make any reference to the shareholder loan account, much less require him to accept 50% of it as a full and final payment.

The Company agrees with Smith that the Outline's "terms are clear and unambiguous[.]" Appellee's Brief at 25. However, it contends that the trial court "did not err in admitting parol evidence to assist in determining whether the parties intended the writing to be a complete embodiment of their agreement." *Id.* at 26 (citing *Lenzi v. Hahnemann University*, 664 A.2d 1375, 1379-80 (Pa. Super. 1995)).

The trial court did not specifically address its admission of parol evidence in either its March 10, 2020 opinion or its September 11, 2020 supplemental opinion. Instead, the court focused on whether the Outline constituted a contract and whether there was a meeting of the minds to support a finding that a contract existed. While we do not disagree with the trial court's determination that a contract was formed, further discussion is warranted with respect to whether the trial court properly admitted and considered parol evidence.

We note initially that "our standard of review regarding the challenge to the admissibility of evidence is very narrow; we will only reverse a ruling of the trial court if there is an abuse of discretion or error of law." *Kehr Packages, Inc. v. Fidelity Bank, Nat. Ass'n*, 710 A.2d 1169, 1172 (Pa. Super. 1998) (citation omitted).

In *DeArmitt v. New York Life Ins. Co*., 73 A.3d 578 (Pa. Super. 2013), this Court explained:

Pennsylvania law defines the parol evidence rule as:

Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 497, 854 A.2d 425, 436 (2004) (quoting *Gianni v. R. Russel & Co.*, 281 Pa. 320, 323, 126 A. 791, 792 (1924)). The parol evidence rule seeks to preserve the integrity of a written agreement by barring the contracting parties from trying to alter the meaning of their agreement through use of contemporaneous oral declarations. *Lenzi v. Hahnemann University*, 445 Pa. Super. 187, 664 A.2d 1375, 1379 (1995).

*Id.* at 589.

As reflected in the above-quoted excerpt from *Yocca*, our Supreme Court has instructed that the terms and agreements reflected in a written contract cannot be added to or subtracted from, absent fraud, accident, or mistake. *Yocca*, 854 A.2d at 436. "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Id.* at 436-37 (citations omitted). More recently, however, the Court explained:

When parol evidence is admissible, "it must generally have a foundation in pre-existing evidence of fraud, accident or mistake," except when it is introduced "not to contradict or vary, but to explain the contract, as when something is omitted . . . so as to

qualify the tribunal passing upon the writing to interpret it truly according to the intent of the parties."

*Starling v. Lake Meade Property Owners Association, Inc.*, 162 A.3d 327, 341 (Pa. 2017) (quoting *Baltimore & Phila. Steamboat Co. v. Brown*, 54 Pa. 77, 81–82 (1867)).

Similarly, in *Lenzi*, this Court held that "[t]he parol evidence rule does not preclude the admission of evidence to establish whether the parties *intended* the writing to be a complete embodiment of their agreement." *Lenzi*, 664 A.2d at 1379 (citing *Murray v. University of Pennsylvania Hospital*, 490 A.2d 839 (Pa. Super. 1985)) (emphasis in original). This Court determined that "whether the writing constituted the entire agreement was a question of law for the court," and, therefore, the trial court properly allowed testimony to determine whether the writing represented the entire contract. *Id.* at 1379. "The trial court did not accept the introduction of parol evidence to vary the *terms* of the [document], but allowed the testimony to aid in defining the *intent* of the parties with regard to termination of [Lenzi's] employment." *Id.* at 1379-80 (emphasis in original). "Therefore, the introduction of testimony as to intent was relevant to the ultimate issue as to whether the [document] was a fully integrated writing and did not constitute error." *Id.* at 1380. *See also Murray*, 490 A.2d at 844 ("Parol evidence may always be considered by the court to determine whether the parties intended the writing to be a complete embodiment of their agreement.").

Here, the trial court considered the testimony of Gasbarre and Smith to ascertain the intent of the parties and concluded:

> Based on the conduct of the parties, the writing between the parties, and the testimony of *the parties' intentions*, this court finds that a contract exists between [the Company] and [Smith] as found in the Outline, regardless of the fact that the final agreement was not signed by the parties. [Smith] had agreed to accept one-half of his shareholder loan claim from [the Company] to settle this issue. Likewise, [the Company, which] had argued it owed [Smith] nothing for any shareholder loan, agreed to pay [Smith] one-half of [Smith's] claim to settle this issue.

Trial Court Opinion, 3/10/20, at 6 (emphasis added). We find neither abuse of discretion nor error of law in its admission of the testimony. The testimony was admissible to explain whether or not the Outline in fact resolved all issues between the parties, in particular, the settlement of Smith's shareholder loan account. The record supports that paragraph 10 represented the final resolution of this last remaining issue. Accordingly, the court did not err in admitting parol evidence and hence, determining that the Outline resolves the issue of Smith's shareholder loan account. Smith is not entitled to relief on his final two issues.

### III. Conclusion

In sum, Smith's procedural challenges to this specific performance case lack merit. Additionally, the trial court's factual finding that the parties entered into a written contract finds support in the evidence of record. We further conclude that the trial court did not err in relying upon parol evidence to ascertain that the parties intended the Outline to be a complete

embodiment of their agreement. Therefore, we affirm the July 21, 2020 judgment in favor of Gasbarre entered after the denial of Smith's motion for post-trial relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2022