J-A17027-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JANE DOE, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEPAUL USA INC., DEPAUL | : | No. 1531 EDA 2023 |
| INTERNATIONAL, AND TRUSTEES OF | : | |
| THE UNIVERSITY OF PENNSYLVANIA | : | |
| D/B/A THE UNIVERSITY OF | : | |
| PENNSYLVANIA | : | |

Appeal from the Order Dated May 25, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): December Term, 2018 No. 3258

BEFORE: BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.: **FILED MARCH 4, 2025**

Appellant, Jane Doe,[1] appeals from the order granting a motion by Appellees DePaul USA Inc. (DePaul USA), DePaul International, and Trustees of the University of Pennsylvania (Penn), (collectively Appellees) to enforce settlement and directing Appellant to execute a confidential settlement agreement and general release or risk imposition of sanctions. Appellant argues that no agreement had been reached by the parties and, further, a condition precedent to formation of any contract is her execution of a release and as this has not occurred there is no settlement agreement to enforce. We reverse.

_____

[1] The trial court sealed this matter upon joint motion of the parties on August 26, 2020. **See** Trial Ct. Order, 8/26/20.

On December 28, 2018, Appellant filed a complaint against Appellees alleging negligent hiring and supervision of C.S., a then-employee of Appellees DePaul USA and DePaul International, and negligence on the part of Appellee Penn in placing Appellant, then a student at the University of Pennsylvania, under C.S.'s supervision in a fieldwork placement that was a requirement of Appellant's degree program. *See* Appellant's Compl., 12/28/18, at 6-9. Appellant alleged that C.S. raped her multiple times during her fieldwork placement and that Appellees' negligence was a direct and proximate cause of harm inflicted upon her by C.S. *See id.* at 3-6.

While the instant negligence action was pending, C.S. filed a separate defamation lawsuit against Appellant on June 15, 2022. *See* Appellees' Mot. to Enforce Settlement, 8/8/22, (Mot. to Enforce) Exh. Z. In his defamation action, C.S. alleges that, as a result of the same allegations that Appellant made in the instant negligence complaint, he was arrested and criminally charged with rape and related offenses against Appellant. *See* Appellant's Compl., 12/28/18, at 3-6. C.S. further asserts that he went to trial on these charges in December of 2021, but that the Commonwealth withdrew all charges against him at the conclusion of Appellant's testimony. *See* Appellees' Mot. to Enforce, Exh. Z at 6-9; Appellant's Resp. in Opp. to Mot. to Enforce Settlement, 8/29/22, (Appellant's Opp. Resp.) Exh. B.

"The litigation [of Appellant's complaint] continued through preliminary objections and extensive discovery[.]" *See* Trial Ct. Op., 9/29/23, at 1. Appellant and Appellees withdrew a total of six discovery motions during the

pendency of this litigation prior to February 3, 2022. *See* Trial Ct. Docket Entries Nos. 83, 89, 112, 113, 158, and 184. On December 17, 2021, after charges were withdrawn against C.S., Appellant and Appellees engaged in mediation before the Honorable Thomas Rueter (Ret.). *See* Appellees' Mot. to Enforce, at 3-4 (unpaginated); *see* Appellant's Opp. Resp. at 4. The parties dispute the outcome of this mediation. Appellant asserts that "[m]ediation failed and no agreement was reached. Discovery continued[,]" and points to her motion of January 5, 2022, seeking to depose C.S., as evidence of her intent to continue to pursue this litigation. *See* Appellant's Opp. Memo at 4.

Appellees, however, assert that an email of February 3, 2022 indicates that "the parties agreed to settle this matter for an agreed upon amount[.]" *See* Appellees' Mot. to Enforce, at 3-4 (unpaginated). Specifically, on February 3, 2022, Andrew S. Kessler, Esq. (Attorney Kessler), counsel for DePaul USA, sent the following email to counsel for Appellant and Appellees:

> Counsel:
>
> I write to advise that we have reached a tentative agreement to resolve the above-referenced matter[, Doe v. DePaul USA, et al.] for the sum of [redacted]. The agreement to resolve this matter will not be finalized and this action will not be considered "settled" until such time as [Appellant] has executed a Release to be drafted and circulated. I would appreciate it if Attorneys Delany, Keller and Takacs [representing Appellee DePaul International] would advise as to the parties to be included in the Release for their respective parties.
>
> I have advised Judge Rueter of the current status of this matter and he wanted me to pass along his thanks to everyone for all their efforts. Please contact me with any questions.
>
> Andy

Appellees' Mot. to Enforce, Exh. D.

On February 4, 2022, Appellant withdrew a discovery motion seeking a protective order to quash one of Appellees' subpoenas. Appellee DePaul USA withdrew its opposition to Appellant's motion to quash subpoena on February 8, 2022. *See id.* Exhs. E and F.

On or around March 2, 2022, Appellee DePaul USA drafted the first version of a "Confidential Settlement Agreement and Release" (release) and circulated a draft release to "all parties for modification and comment" on April 6, 2022. *See id.* at 4-5 (unpaginated), Exhs. H and J. On May 13, 2022, Attorney Kessler emailed other representatives of his client, Appellee DePaul USA, stating that

> [a]s might have been expected, [Appellant's] counsel and his client do not want the indemnification provision (paragraph 4) set forth in the Release. In the attached version you will see that this provision has been stricken but that there is a new paragraph (3(e)) that is more narrowly crafted. We also added a paragraph relative to the dismissal of the civil action. Please review the attached language and provide me with your thoughts on the same. Thanks.

*Id.* at 6 (unpaginated), Exh. P. In their motion to enforce, Appellees characterized Appellant's response to the draft release, described by Attorney Kessler in this May 13, 2022 email, as Appellant had "struck a provision agreeing to indemnify [Appellees] in the event that C.S. asserted a claim arising out of the facts and circumstances surrounding the instant action or the criminal charges asserted against C.S." and that Appellant had "added a provision stating that in the event [Appellant] is named as a defendant in a

civil action brought by C.S., that [Appellant] would not assert any counterclaims in said action sounding in negligence." *Id.* at 6 (unpaginated).

On May 19, 2022, Appellant's counsel emailed Attorney Kessler proposed modifications to the draft release, noting that "[i]f this is agreeable I will direct my client to sign a clean version." *Id.*, Exh. R.

On June 1, 2022, Attorney Kessler advised in an email to counsel for Appellees and Appellant that his client's insurer was still reviewing the indemnification language in the draft release, after counsel for Appellant inquired about the status of the draft. *Id.*, Exh. S.

On June 2, 2022, Attorney Kessler emailed a draft release approved by Appellee DePaul USA to counsel for Appellees and Appellant, noting that "[i]f acceptable to all parties we can finalized the same and it may be executed." *Id.*, Exh. T.

On June 14, 2022, Attorney Kessler emailed counsel for Appellees and Appellant the "latest version" of the release with "a few modifications to the preamble (added board members and the insurer for De[P]aul International) and corrected a typo in 3(e)[,]" and expressed that "I hope that this can receive approval from all, I can finalize it and we can bring this matter to a conclusion." *Id.*, Exh. U.

On June 22, 2022, counsel for Appellee Penn emailed counsel for Appellees and Appellant that his client had approved the "revised version." *Id.*, Exh. V.

On June 29, 2022, Attorney Kessler emailed proposed new language about a Medicare provision to be added to the draft release to counsel for Appellees and Appellant, asking counsel to "[p]lease review, confirm that you are in agreement with the same. At that point, I can add the language to the Release and [Appellant] can be presented with the Release for her execution." *Id.*, Exh. X.

On July 18, 2022, Attorney Kessler emailed Appellant's counsel, "[a]re we good to go with the new Medicare language?" to which Appellant's counsel responded on the same date that "[t]here is no more chance of settlement here[,]" because "[C.S.] filed a defamation lawsuit." *Id.*, Exh. Y.

On August 8, 2022, Appellees filed a motion to enforce settlement, attaching as exhibits the email messages recounted above, but did not provide any written instrument representing the complete terms of the purported settlement agreement and release Appellees sought to enforce. *See id.* at 2-9 (unpaginated); *see also id.* at 6, n.1 (stating that "[t]he full and complete copies of drafts of the Settlement Agreement and Release are not attached in the exhibits as it was the parties' intention to keep said Agreement confidential. [Appellees] will supply any and all drafts of the Settlement Agreement and Release to the [trial court] if requested"). The record does not contain a copy of any draft settlement agreement and release, nor any indication that the trial court reviewed any such document prior to granting Appellees' motion to enforce settlement.

On August 29, 2022, Appellant filed a response in opposition to Appellees' motion to enforce settlement and a supporting memorandum of law. Therein, Appellant characterized the February 3, 2022 email as Appellees' "offer to settle this matter, acceptance of which was contingent upon [Appellant] first executing a Release[,]" and therefore that Appellant's execution of a Release was a condition precedent to formation of a contract. *See* Appellant's Opp. Resp. at 5, 8. Appellant concluded that because it was undisputed that she had not yet executed a release, "the condition precedent demanded in [Appellees'] offer never occurred[]" and therefore "[n]o valid contract was ever created." *Id.* at 8.

After a status hearing on Appellees' motion to enforce on December 2, 2022, the trial court ordered the parties to submit all briefs and evidence they desired to be considered by the trial court in deciding this motion by January 20, 2023. *See* Trial Ct. Order, 12/2/22. The parties did not thereafter file any additional briefs or evidence. On May 25, 2023, the trial court granted Appellees' motion to enforce and ordered Appellant to "execute and return the Confidential Settlement Agreement and General Release or risk imposition of sanctions upon further application to this Court." *See* Trial Ct. Order, 5/25/23. The trial court did not contemporaneously issue any findings of fact or reasons for its decision.

Appellant timely appealed the order of May 25, 2023, and both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant listed five issues

in her Rule 1925(b) statement of errors complained of on appeal. *See* Appellant's Rule 1925(b) statement, 8/9/23, at 1-2 (unpaginated).

In its Rule 1925(a) opinion, the trial court identified and addressed only the latter three of the five issues identified in Appellant's Rule 1925(b) statement and therefore did not address Appellant's argument that Attorney Kessler's email of February 3, 2022 established Appellant's execution of a release as a condition precedent to any settlement agreement. *See* Trial Ct. Op., 9/29/23, at 2.

Appellant identifies the following two claims on appeal:

1.  Whether the trial court reversibly erred in granting the Motion to Enforce and ordering enforcement of a settlement that did not exist when an executed Release was an explicit condition precedent to any settlement, and it is undisputed there was no such execution; hence, there was never any settlement to enforce?

2.  Whether the trial court reversibly erred, in any event — that is, even ignoring the primary issue of a condition precedent, as the trial court did in its Opinion — as the ensuing negotiations were and remained inconclusive; that even thus viewing them in isolation there was never any acceptance, and, hence, for this reason, too, never any settlement to enforce?

*See* Appellant's Brief at 3.[2]

_____

[2] In the third issue in her Rule 1925(b) statement, Appellant complains of the trial court's treatment of Appellees' Motion to Enforce Settlement as a petition and then failing to hold an evidentiary hearing or enter findings of fact prior to ruling on the matter. *See* Appellant's Rule 1925(b) statement, 8/9/23, at 1-2 (unpaginated). In the fourth issue in her Rule 1925(b) statement, Appellant claims that her counsel did "not have express authority to bind [her] to the terms of an agreement without her direct approval. *See id*. at 2.
*(Footnote Continued Next Page)*

To resolve this appeal, we must first identify what constitutes an enforceable agreement. To do so, we are mindful that

> [t]he enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision.
>
> Like any contract, to be enforceable, a settlement agreement must possess all the elements of a valid contract: offer, acceptance, and consideration. It is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject matter of the agreement.
>
> \* \* \*
>
> [A] reply which purports to accept an offer, but instead changes the terms of the offer, is not an acceptance, but, rather, is a counter-offer, which has the effect of terminating the original offer. When the evidence is in conflict as to whether the parties intended that a particular writing should constitute an enforceable contract, it is a question of fact whether a contract exists.
>
> \* \* \*
>
> What is necessary is that the parties agree to all the essential terms and intend the [written instrument] to be binding on them.

*Toppy v. Passage Bio, Inc.*, 285 A.3d 672, 682-83 (Pa. Super. 2022) (citations omitted and some formatting altered). In reviewing the

_____

Appellant's brief does not identify or provide argument for these two issues; therefore, they are abandoned on appeal. *See* Pa.R.A.P. 2116(a), 2119(a); *see also Allied Envtl. Serv., Inc. v. Roth*, 222 A.3d 422, 424 n.1 (Pa. Super. 2019) (finding waiver where the appellant abandoned claim on appeal).

enforceability of a settlement agreement, "we are only bound by the trial court's findings of fact which are supported by competent evidence. The prevailing party is entitled to have the evidence viewed in the light most favorable to its position." *King v. Driscoll*, 296 A.3d 1178, 1183-84 (Pa. Super. 2023) (citation omitted).

Relevantly, our Supreme Court has stated:

When there exists conflicting evidence as to whether the parties intended that a particular writing would constitute a complete expression of their agreement, the parties' intent is a question to be resolved by the finder of fact[]. We will not reverse such finding unless it is unsupported by the evidence, or unless the fact finder has clearly abused its discretion or committed an error of law. In reviewing such finding, we are mindful that it is understandable that when, after a prolonged period of negotiations, parties appear to reach agreement on the essential terms of an important transaction, one of them might believe that a contract had been made. However, before preliminary negotiations ripen into contractual obligations, there must be manifested mutual assent to the terms of a bargain. If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced. If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce, such an agreement must be set aside.

*Mazzella v. Koken*, 739 A.2d 531, 536-37 (Pa. 1999) (citations omitted and some formatting altered).

For an enforceable agreement to exist, the [proponent] must prove all essential elements of a contract by a preponderance of the evidence. . . . Absent a manifestation of an intent to be bound . . . negotiations concerning the terms of a possible future contract do not result in an enforcement agreement. . . . [A] court is constrained to construe the parties' contract based on the parties **outward and objective actions** – particularly, the plain terms of their written agreement – a subjective, or 'true and actual,'

- 10 -

meeting of the minds is not necessary for an enforceable contract to form.

***Gasbarre Products, Inc. v. Smith***, 270 A.3d 1209, 1218 (Pa. Super. 2022) (citations omitted, some formatting altered, and emphasis in original).

In sum, the proponents of a contract have the burden to prove, by a preponderance of the evidence, that the parties had a meeting of the minds on the essential or material terms of an agreement, including the intent of the parties to be bound by these terms. ***See Toppy***, 285 A.3d at 682-83; ***see also Mazzella***, 739 A.2d at 536; ***Gasbarre***, 270 A.3d at 1218.

Here, the trial court concluded that Appellant had manifested assent to a settlement agreement based in part on the communications between the parties contained in "Exhibits P, Q, R, S, and T" of Appellees' motion to enforce settlement. Trial Ct. Op., 9/29/23, at 3-4. The trial court noted that the "parties engaged in six months of painstaking modifications to the Settlement Agreement and Release after the settlement amount had been reached[,]" and stated that "most critical to [the trial court's] assessment was . . . [Appellant's] request to have indemnification language stricken [which] resulted in modification of terms and [Appellees] were informed that if the modifications were agreeable that [Appellant] would sign the Release." ***Id.*** The trial court also reasoned that Appellant's withdrawal of a discovery motion on February 4, 2022, "supports a finding of the parties' intention to resolve the [] action," noting that, after this withdrawal and Appellee DePaul USA's withdrawal of opposition to this motion, "not a single entry appears on the

docket until the instant application to enforce the settlement was filed on August 8, 2022." *Id.* at 4.

Based on our review of the record, we are constrained to reach a different conclusion. *See King*, 296 A.3d at 1183-84; *Toppy*, 285 A.3d at 682-83. Exhibits P, Q, R, S, and T demonstrate that on or around May 13, 2022, Appellant requested a modification to the draft release and that Attorney Kessler responded, "I have modified the Release as per our conversation[,]" to which Appellant's counsel replied on May 19, 2022, "I made a few mods to the release to fully reflect the intentions here. I think they are self-explanatory but I'm happy to speak further about things if you or the others have questions. If this is agreeable I will direct my client to sign a clean version." *See* Appellees' Mot. to Enforce, Exhs. P, Q, and R. On June 1, 2022, Attorney Kessler forwarded to the parties a draft release that "incorporates all of [Appellant's counsel's] comments as well as those from counsel who has been assisting me" and requested feedback. *See id.*, Exh. S. The next day, June 2, 2022, Attorney Kessler emailed the parties that "my clients have approved the draft version of the Release which I forwarded to all of you yesterday. If acceptable to all parties we can finalize the same and it may be executed." *See id.*, Exh. T. On June 14, 2022, Attorney Kessler sent an email notifying the parties that Appellee DePaul International made additional modifications to the draft release. *See id.*, Exh. U.

In this context, Appellant's counsel's statement that, "If this is agreeable I will direct my client to sign a clean version[,]" indicates Appellant's offer to

settle was based on the terms of the draft release that she had proposed as of May 19, 2022. *See id.*, Exh. R. Appellees responded with a draft release that contained modified terms. *See id.*, Exh. S. We conclude that, even viewed in the light most favorable to Appellees, this evidence illustrates that Appellees, in the email of June 1, 2022, provided a "a reply which . . . changes the terms of [Appellant's] offer," and as such Appellees extended "a counter-offer, which has the effect of terminating the original offer," and therefore there was not a meeting of the minds or "manifested mutual assent to the terms of a bargain." *See Toppy*, 285 A.3d at 682 ("[a] reply which purports to accept an offer, but instead changes the terms of the offer, is not an acceptance, but, rather, is a counter-offer, which has the effect of terminating the original offer[,]" and "the minds of the parties should meet upon all the terms . . . of the agreement" (citations omitted)); *see also Mazzella*, 739 A.2d at 536-37 ("there must be manifested mutual assent to the terms of a bargain" in order for a settlement to be enforced (citation omitted)).

Further, we disagree with the trial court's conclusion that Appellant's conduct manifested assent to a settlement agreement when she withdrew a discovery motion on February 4, 2022. As noted above, the record reflects that Appellant and Appellees withdrew discovery motions on six different occasions prior to February 3, 2022, the date by which Appellees assert the parties reached a meeting of the minds. *See* Trial Ct. Docket Entries Nos. 83, 89, 112, 113, 158, and 184. Viewing the complete record in the light most favorable to Appellees, we conclude that the evidence fails to establish that

Appellant agreed to all the essential terms of a contract or manifested an intent for these terms to be binding on her. **See Toppy**, 285 A.3d at 683.

Lastly, we address Appellees' argument that the parties had a meeting of the minds prior to Attorney Kessler's February 3, 2022 email and that this email is proof that the parties reached an oral agreement. The February 3, 2022 email references a "tentative agreement." The only term of the purported agreement described within this email, however, is that the parties agreed to a settlement amount. Appellees did not provide to the trial court, and the trial court did not request or review, any written instrument representing the other essential or material terms of the settlement agreement they sought to enforce.

Accordingly, the record lacks competent evidence upon which the trial court could have concluded that Appellees met their burden of proving, by a preponderance of the evidence, that the parties had a meeting of the minds regarding the essential or material terms of a settlement agreement and manifested their mutual assent to the terms of this bargain, either prior to February 3, 2022, or at any other time up to the trial court's order of May 25, 2023. **See Mazzella**, 739 A.2d at 536-37; **Toppy**, 285 A.3d at 683; **Gasbarre**, 270 A.3d at 1218.

We therefore reverse the May 25, 2023 order granting Appellees' motion to enforce settlement and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>3/4/2025</u>